540 So.2d 691 (1988)
ALFA MUTUAL INSURANCE COMPANY
v.
Carl S. SMITH, Jr.
87-158.
Supreme Court of Alabama.
December 2, 1988.
Application for Rehearing Granted; Application Overruled and Opinion Modified February 17, 1989.
*692 Alan T. Rogers and Martha F. Petrey of Balch & Bingham, Birmingham, for appellant.
Jimmy Alexander and Linda B. Lloyd of Alexander, Corder & Plunk, Athens, for appellee.
Appellant's Application for Rehearing Granted; Appellee's Application Overruled and Opinion Modified February 17, 1989.
STEAGALL, Justice.
ALFA Mutual Insurance Company ("ALFA")[1] appeals from a judgment based on a jury verdict of $75,000 in favor of Carl Smith on August 19, 1987, on his bad faith claim against ALFA for its nonpayment of insurance proceeds after the home owned by him and his ex-wife, Marshia Smith Hewitt, was destroyed by fire. Smith had originally sued ALFA and Hewitt on October 26, 1979, for breach of contract, negligence, and wantonness, and for reformation of an insurance contract to show him as the named insured. Because Hewitt also sued ALFA for the proceeds, the company filed an interpleader, paying the funds into court, and the trial court distributed the money between Smith and Hewitt. Smith's case was tried only on the breach of contract count, as all of the other counts were either stricken or dismissed, and he was awarded $10,000 on May 6, 1980. The Court of Civil Appeals reversed that judgment and remanded the case based upon the trial court's erroneous instruction that damages for mental anguish may be awarded in an action for breach of an insurance contract. Alabama Farm Bureau Mutual Casualty Insurance Co. v. Smith, 406 So.2d 913 (Ala.Civ.App.1981). On remand, Smith filed an amended complaint on September 7, 1983, alleging bad faith, based upon Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala. 1981), which had been decided more than a year after the first trial. The case was tried again on both the bad faith and breach of contract counts, and on August 19, 1987, the jury awarded Smith $75,000. ALFA's motions for directed verdict and for a judgment notwithstanding the verdict or, in the alternative, a new trial, and remittitur, were denied. ALFA argues on appeal that the bad faith count was barred by the statute of limitations, that the evidence of bad faith was insufficient, and that the punitive damages were excessive and unconstitutional.

I
The statute of limitations for bad faith claims arising on or after January 9, 1985, is two years. Ala.Code 1975, § 6-2-38(l) (Cum.Supp.1987); Dumas v. Southern Guaranty Insurance Co., 408 So.2d 86 (Ala.1981). All bad faith claims accruing prior to that date had a one-year statute of limitations under Ala.Code 1975, § 6-2-39(a)(5) (repealed). Because this case arose in 1979, the one-year statute of limitations controls. A cause of action for *693 bad faith refusal to pay insurance benefits accrues for statute of limitations purposes "when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the possible existence of [bad faith]." Farmers & Merchants Bank v. Home Ins. Co., 514 So.2d 825 (Ala.1987). Here, Smith received a letter from ALFA's fire claims supervisor, Gene Hatfield, on October 31, 1979, informing him that coverage was denied to him because he did not appear as a named insured on the policy. Thus, the statutory period ran on the bad faith claim on October 31, 1980.
Two threshold questions must be answered: 1) whether Smith's amendment adding the bad faith claim after the original judgment was reversed and the case remanded by the Court of Civil Appeals was proper, and 2) if so, whether that claim is nonetheless barred by the applicable one-year statute of limitations. Two recent cases answer both questions.
In Ex parte Insurance Company of North America (Citizensbank of Thomasville v. Insurance Company of North America), 523 So.2d 1064 (Ala.1988), this Court's prior reversal and remand in that same case, based upon the trial court's failure to grant a directed verdict for the insurer on a bad faith claim (because there was insufficient evidence of a bad faith refusal to pay an insurance claim), precluded an amendment to the complaint and a reopening of the pleadings on remand. After determining that the prior decision in Citizensbank, supra, was a final judgment, we cited three cases on the issue of whether Rule 15, A.R.Civ.P., allowed the post-appeal amendment. We concluded, after discussing Hughes v. Hughes, 429 So.2d 1077 (Ala.Civ.App.1983), that "a trial court has the discretion to consider new issues on remand if the appellate court's opinion did not constitute or require a final adjudication of the case." 523 So.2d at 1069. Likewise, we noted that Burton v. Howard, 496 So.2d 764 (Ala.1986), held that "a trial court, after this Court has reversed and remanded without directions but has not entered a judgment constituting a final adjudication of all issues, has the discretion to grant a motion to amend an original complaint as to issues not yet finally adjudicated." 523 So.2d at 1069. The third case was cited by Citizensbank for an over-inclusive holding that we rejected:
"Citizensbank relies on Havard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 302 So.2d 228 (1974), for the proposition that a plaintiff can amend its complaint after this Court has reversed without directions. As we have already noted, that proposition is not necessarily untrue, but neither is it correct in all situations. In Havard, this court reversed a judgment for the plaintiff, holding that `the affirmative charge should have been given by the trial judge,' but then went on to allow an amendment to the complaint and further proceedings under the amended complaint. To the extent that Havard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 302 So.2d 228 (1974), is inconsistent with our holding in the present case, it is expressly overruled."
523 So.2d at 1070.
The Court of Civil Appeals' reversal and remand in the previous appeal of the present case was not a final judgment because of the ground upon which it was reversed, that is, the trial court's erroneous instruction. Aside from the amendment to state a bad-faith claim, Smith was entitled to a new trial on his breach of contract claim on remand. This case is compounded in that the tort of bad faith had not been recognized when Smith filed his original complaint in October 1979. Smith's bad faith claim was, rather, a new issue "not yet finally adjudicated." The plaintiff in Bahakel v. City of Birmingham, 457 So.2d 348 (Ala.1984), was prevented from amending the complaint to allege additional grounds of recovery because this Court had previously affirmed the trial court's dismissal of the original complaint. Because our affirmance of the dismissal of the original complaint in the previous appeal was final and our first opinion did not provide for further amendment, we affirmed on the second appeal the trial court's dismissal of the amended complaint.
*694 Based upon the above reasons and cited authorities, we hold that Smith's amendment to add the bad-faith claim was proper.
Our next question is whether that claim is barred by the statute of limitations or whether it relates back to Smith's original complaint, under Rule 15(c), A.R.Civ.P.[2] The other recent case alluded to in this opinion, McCollough v. Warfield, 523 So.2d 374 (Ala.1988), involved an original complaint filed on February 19, 1985, for breach of a contract signed January 20, 1984. The McCulloughs filed an amended complaint on November 26, 1986, alleging fraud, which the trial court held was barred by the statute of limitations. In reversing the trial court's disallowance of the amendment in Citizensbank, we cited McClendon v. City of Boaz, 395 So.2d 21, 26 (Ala.1981):
"`That the amendment adds a new theory or revamps the format of the complaint is immaterial. When a new theory of liability is based upon the same facts and those facts have been brought to the attention of the opposite party by previous pleading, no prejudice is worked by allowing the amendment.'"
523 So.2d at 375.
Furthermore, the test for whether an amendment states a new cause of action, thus precluding its relation back to the original complaint, was stated in Knox v. Cuna Mutual Insurance Society, 282 Ala. 606, 613, 213 So.2d 667, 673 (1968):
"A new cause of action is not set up by amendment where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope of the testimony. United States Steel Corp. v. McGehee, 262 Ala. 525, 80 So.2d 256; Isbell v. Bray, 256 Ala. 1, 53 So.2d 577; Alabama Consolidated Coal & Iron Co. v. Heald, 154 Ala. 580, 45 So. 686."
(Emphasis added.) Cf., Ex parte Woodward Iron Co., 277 Ala. 133, 167 So.2d 702 (1964). In light of the foregoing, we hold that Smith's amendment alleging bad faith is not time-barred by the statute of limitations.

II
ALFA also argues that there was insufficient evidence on the issue of bad faith. Specifically, ALFA contends that it had an arguable reason for denying Smith's claim.
Smith and Hewitt's house burned on August 31, 1979, and Hewitt filed a proof of loss with ALFA the same day under their $50,000 policy. ALFA's investigator, Jim Posey, inspected the house on September 6, 1979, and found it to be a total loss. The origin of the fire was in the vicinity of the stairwell and heat exchange. Posey's report on September 10, 1979, to Hatfield reads, "Our insured and her new husband, Brian Hewitt, discussed burning this home on 8-19-79. I talked with the Athens Fire Department and Police Department and they are of the opinion that this is a case of arson. The suspects are Carl Smith and Brian Hewitt."
Smith met with Posey on September 13, 1979, at ALFA's office in Decatur, where Posey questioned Smith for approximately 45 minutes about the events during and after the fire. Posey then interviewed Smith again during that meeting, and taped the conversation. On September 14, 1979, Smith's attorney wrote to Posey, requesting Smith's "rightful share of the proceeds," and suggested that First Federal Savings and Loan Association ("First Federal"), *695 Smith and Hewitt's mortgagee, be paid the amount due on the mortgage, and that the balance be interpleaded for disbursement according to Smith and Hewitt's divorce judgment. Posey's reply on September 17 stated that Hewitt was the insured and that "according to our policy information the above referenced person is the only one we show as named insured." Although Smith had met with Jim Bendall, ALFA's local insurance agent, on March 15, 1979, and signed a form entitled "New Application, Added Coverage, Reinstatement, for Rate" that changed the named insured on the policy to Marshia Smith Hewitt, Smith denied discussing such a change with Bendall, or signing a form authorizing such a change.
First Federal requested, on October 10, 1979, that ALFA pay the balance of the mortgage debt, $30,492.79, which ALFA did on January 31, 1980. Because both Smith and Hewitt claimed the remainder of the policy proceeds, $18,745.69, ALFA interpleaded that amount on March 25, 1980. Based on the conflicting claims to the policy proceeds, the name change of the insured in the policy, and the fact that the fire was of suspicious origin, ALFA wrote First Federal, Smith's lawyer, and Posey, on October 31, 1979, saying that "[c]overage has been denied to Carl Stewart Smith, Jr., since he no longer appears as an insured on this policy."
Smith claims that this was an insufficient reason to deny him coverage under the policy. But, "if any one of the reasons for denial of coverage is at least `arguable,' this Court need not look any further," and a claim for bad faith refusal to pay the claim will not lie. McLaughlin v. Alabama Farm Bureau Mutual Casualty Insurance Co., 437 So.2d 86, 91 (Ala.1983). Either the fact that Hewitt was the named insured, or that arson was the suspected nature of the fire, would be sufficient justification for ALFA to deny Smith coverage:
"In this case, the trial judge apparently found that CRE had a `debatable reason' for denying Calvert's claim, and that there was no genuine issue of material fact on the bad faith claim. The presence of the following issues before the trial judge at the time he made his decision require this conclusion: whether an insurance contract existed between Calvert and CRE; whether Houseal was CRE's agent; and whether CRE's internal acceptance procedures prevented it from issuing a policy unless it received an original signed application and received it no later than 45 days after the policy's effective date. These issues show a debatable reason for CRE's refusal to pay Calvert's claim...."
Calvert v. Casualty Reciprocal Exchange Insurance Co., 523 So.2d 361, 364 (Ala. 1988).
Because only Hewitt's name was on the policy, there was a question whether ALFA was liable to Smith on the contract, thus precluding Smith's bad faith claim. "[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie." Bowers v. State Farm Mutual Auto. Insurance Co., 460 So.2d 1288, 1290 (Ala. 1984).
Moreover, an insurer must have acted with an intent to injure to be guilty of bad faith. Coleman v. Gulf Life Insurance Co., 514 So.2d 944 (Ala.1987). Because Smith has shown no such intent on the part of ALFA, and because there existed a legitimate question as to ALFA's responsibility to Smith on the contract as well as a question regarding the nature of the fire, ALFA's motion for judgment notwithstanding the verdict should have been granted as to the bad faith claim. After reviewing the evidence in a light most favorable to Smith, and indulging such inferences as the jury was free to draw, we find that the evidence was insufficient to support the verdict insofar as it was based on the bad faith claim. Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala. 1982). Therefore, the judgment is reversed; judgment is rendered for defendant ALFA on the bad faith claim, and because the jury did not differentiate between damages for breach of contract and bad faith, the cause is remanded for a new trial on the breach of contract claim.
*696 REVERSED; JUDGMENT RENDERED FOR DEFENDANT ON THE BAD FAITH CLAIM; REMANDED FOR A NEW TRIAL ON THE CONTRACT CLAIM.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

ON APPLICATION FOR REHEARING
STEAGALL, Justice.
Both parties have applied for rehearing. We grant ALFA's application. Our opinion of December 2, 1988, is modified so as to direct the trial court to enter a judgment in favor of Smith and against ALFA for $1,640.89 as the amount of damages for breach of contract.
APPELLANT'S APPLICATION GRANTED; APPELLEE'S APPLICATION OVERRULED; OPINION MODIFIED; REMANDED WITH DIRECTIONS.
JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
NOTES
[1] At the time of trial, this defendant's name was "Alabama Farm Bureau Mutual Casualty Insurance Company"; this defendant is now known as "ALFA" and it is referred to by that name in this opinion.
[2] "Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading...." Rule 15(c), A.R.Civ.P.