On March 19, 2001, Sarah Carter, as the administrator of the estate of City Carter, and James A. Carter filed a complaint against Liberty National Life Insurance Company ("Liberty National"). In that complaint, the plaintiffs asserted claims of fraud. On Liberty National's motion, the trial court dismissed the complaint, because in it, the plaintiffs had failed to plead the alleged fraud with sufficient specificity, as required by Rule 9(b), Ala.R.Civ.P. On July 16, 2001, the plaintiffs filed an amended complaint that contained essentially the same allegations as those set forth in the plaintiffs' March 19, 2001, complaint. Liberty National filed a motion to dismiss the amended complaint, arguing that the complaint failed to sufficiently apprise Liberty National of the plaintiffs' claims against it. The trial court entered an order dismissing the July 16, 2001, amended complaint. *Page 979 
On January 22, 2002, the plaintiffs filed a second amended complaint in which they again asserted various fraud claims and asserted for the first time claims of wanton or negligent supervision and breach of contract. Liberty National moved to dismiss that complaint; it submitted evidence in support of its motion to dismiss. The plaintiffs opposed the motion to dismiss and argued that Liberty National's motion should be treated as a motion for a summary judgment. The trial court agreed that Liberty National's motion to dismiss had been converted, pursuant to Rule 12(c), Ala.R.Civ.P., to a motion for a summary judgment. On May 8, 2002, the trial court entered a summary judgment in favor of Liberty National on all of the plaintiffs' claims. The plaintiffs appealed to the Supreme Court of Alabama, which transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
A summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.; Bussey v. John Deere Co., 531 So.2d 860
(Ala. 1988). After the moving party makes its prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794
(Ala. 1989). To carry that burden, the nonmoving party is required to present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must view the evidence in a light most favorable to the nonmoving party, and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
The facts relevant to the issue presented in this appeal are as follows: City Carter was the mother of James A. Carter and Sarah Carter. The record indicates that the members of the Carter family had a number of insurance policies with Liberty National. In 1999, the plaintiffs sought to obtain from Liberty National a list of all insurance policies it had issued to members of the Carter family. On May 10, 1999, Liberty National sent a letter to the plaintiffs in which it listed the various policies it had issued to various members of the Carter family. In the trial court, the plaintiffs alleged, among other things, that Liberty National had wrongfully failed to pay benefits due under the insurance contracts owned by James Carter or City Carter. In opposition to that claim, Liberty National presented evidence indicating that almost all of the insurance policies owned by members of the Carter family had been paid according to the terms of the policies, had lapsed, or had been converted for the cash-surrender values of the insurance policies.
Much of the dispute in the trial court centered around James Carter's fraud claims related to a whole-life insurance policy in his name. The plaintiffs have not argued in their brief on appeal that the trial court erred with regard to its judgment in favor of Liberty National on those claims. Therefore, we do not set forth the facts pertinent to those claims.
City Carter died of natural causes on March 18, 1995. Following City Carter's death, Liberty National paid death benefits pursuant to four insurance policies City Carter had obtained from Liberty National. The trial court found that those policies were "cemetery, vault, and burial *Page 980 
policies." Liberty National apparently had a bank-draft arrangement with James Carter, and after City Carter's death, continued to remove from James Carter's bank account amounts for premiums for policies in James Carter's name. Until 1997, Liberty National also withdrew $.49 per month from James Carter's bank account for the premium due on policy number 12485788, which was an accidental-death-and-dismemberment policy on which City Carter was the insured. In March 2002, Liberty National refunded to James Carter a total of $19.89, representing the premiums it had collected on policy number 12485788 after City Carter's death, plus interest.
In their first two complaints, both of which the trial court dismissed, the plaintiffs made no allegations with regard to policy number 12485788 or Liberty National's withdrawing from James Carter's accounts after City Carter's death amounts for premiums for that policy insuring City Carter. In their second amended complaint, filed on January 22, 2002, the plaintiffs alleged that Liberty National, by continuing to withdraw payment for the premiums on policy number 12485788 after the death of City Carter, had committed a breach of contract. In that January 22, 2002, second amended complaint, the plaintiffs did not allege any fraud claim with regard to policy number 12485788.
In its motion for a summary judgment, Liberty National argued, among other things, that the claims asserted in the plaintiffs' January 22, 2002, second amended complaint were barred by the applicable statutes of limitations or the rule of repose because the policies had been issued in the 1970's. See § 6-2-38(l), Ala. Code 1975 (setting forth a two-year statute of limitations for actions such as those asserting fraud claims), and Boshell v. Keith, 418 So.2d 89 (Ala. 1982) (the rule of repose bars claims that have not been asserted for 20 years). Also, Liberty National submitted the affidavit of Thomas E. Hamby, a vice president of Liberty National, in which Hamby testified regarding the disposition of the insurance policies City Carter had with Liberty National. Hamby also testified that Liberty National had paid benefits pursuant to four insurance policies in the name of City Carter, but that no claim had been filed under policy number 12485788, the accidental-death-and-dismemberment policy on City Carter.
The plaintiffs opposed the motion for a summary judgment by arguing that their fraud claims were not barred by the two-year statute of limitations. In the portion of their argument pertinent to the issue raised in this appeal, the plaintiffs claimed that they were unaware of the existence of policy number 12485788 until May 10, 1999, when they received Liberty National's letter listing the various insurance policies owned by the Carter family. The plaintiffs asserted that there was no method by which they could have learned before May 10, 1999, of the existence of policy number 12485788 or of Liberty National's monthly withdrawal from James Carter's account of premium payments for that policy. The plaintiffs contended that May 10, 1999, was the date the statute of limitations began to run on their fraud claim related to policy number 12485788. In opposition to Liberty National's motion for a summary judgment, the plaintiffs submitted the affidavit of Sarah Carter, in which she stated, in pertinent part, only that "a claim was made to Liberty National Life Insurance Company for all benefits that City Carter was entitled to under all insurance policies that were in her name."
On appeal, the plaintiffs argue only that the trial court erred in entering a *Page 981 
summary judgment on their fraud claim related to policy number 12485788; they make no argument on appeal with regard to the breach-of-contract claim they asserted with regard to policy number 12485788 or the negligence or wantonness claims they asserted in the trial court. The elements of a fraud claim are: "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence."Brushwitz v. Ezell, 757 So.2d 423, 429 (Ala. 2000) (citing Foremost Ins.Co. v. Parham, 693 So.2d 409, 422 (Ala. 1997)).[1] We note that the plaintiffs made no argument to the trial court, and they make no argument to this court, that tends to explain how the facts related to policy number 12485788 amount to fraud. This court will not endeavor to fashion from the facts of this case a theory upon which a fraud claim might be based with regard to policy number 12485788. It is not the function or duty of this court to create legal arguments for an appellant. Gonzalezv. Blue Cross/Blue Shield of Alabama, 760 So.2d 878 (Ala.Civ.App. 2000).
For the purposes of this appeal, we will assume, without deciding, that the plaintiffs did state a cognizable claim of fraud on the part of Liberty National related to policy number 12485788. The plaintiffs had two years in which to bring a fraud action with regard to that policy. § 6-2-38(l), Ala. Code 1975. The plaintiffs maintained before the trial court and continue to argue to this court that the statute of limitations on their fraud claim did not begin to run until May 10, 1999, the date they received the letter from Liberty National allegedly informing them of the existence of policy number 12485788. We do not necessarily agree with the plaintiffs that, given the facts of this case, they could not have discovered before May 10, 1999, the existence of policy number 12485788 or that Liberty National had, from 1995 to 1997, continued to withdraw from James Carter's account the premium payments for that policy. However, we need not decide the issue of when the plaintiffs knew or should have known of those facts because, even using May 10, 1999, as the date the plaintiffs first gained notice or knowledge of those facts, we conclude that the plaintiffs' claims with regard to policy number 12485788 are barred by the applicable two-year statute of limitations set forth in § 6-2-38(l), Ala. Code 1975.
On January 22, 2002, the plaintiffs filed their second amended complaint. In that January 22, 2002, second amended complaint, the plaintiffs alleged, for the first time, a claim related to Liberty National's collecting premiums on policy number 12485788 after City Carter's death. We note that in that second amended complaint, the plaintiffs asserted a breach-of-contract, rather than a fraud, claim with regard to those facts; however, it appears that the plaintiffs argued the fraud claim in their opposition to Liberty National's motion to dismiss that was converted to a motion for a summary judgment. We must view the facts in a light most favorable to the nonmovant, see Hanners v. BalfourGuthrie, Inc., supra. Therefore, for the purposes of this appeal, we will assume that May 10, 1999, was the date upon which the plaintiffs first had notice or knowledge of the facts giving rise to the alleged fraud pertaining to policy number *Page 982 
12485788. Even so, the January 22, 2002, filing of the second amended complaint containing the claim related to policy number 12458788 was well in excess of the applicable two-year statute of limitations.
The plaintiffs assert that they timely filed their action on March 19, 2001, within two years of May 10, 1999. However, the trial court dismissed the plaintiffs' March 19, 2001, original complaint for failure to plead fraud with the specificity required by Rule 9(b), Ala.R.Civ.P. Further, the plaintiffs' March 19, 2001, complaint did not contain any allegations that can be said to pertain to policy number 12485788 or to Liberty National's withdrawal of funds from James Carter's account to pay the premiums on that policy. The plaintiffs have not argued that their claim with regard to policy number 12485788, as it was framed in their January 22, 2002, complaint, relates back, pursuant to Rule 15(c), Ala.R.Civ.P., to the date of the filing of their original, March 19, 2001, complaint. Even assuming that Rule 15(c), Ala.R.Civ.P., allows an amended pleading to relate back to the date of the filing of a dismissed pleading, the facts of this case would not support a conclusion that the plaintiffs' claim with regard to policy number 12485788 should relate back to the date of the plaintiffs' original March 19, 2001, complaint.[2]
 "This Court has held that when an amendment merely changes the legal theory of a case or merely adds an additional theory, and the new theory is based upon the same facts as the original one and those facts have been brought to the attention of the defendant, the amendment does not prejudice the defendant; we have held that such an amendment is to be taken as merely a more definite statement of the original cause of action and that it relates back to the date of the original complaint. See McCollough v. Warfield, 523 So.2d 374 (Ala. 1988), and the cases quoted therein. However, this Court has also held that where the plaintiff, in an amendment filed beyond the statutory limitations period, alleges facts that were not alleged in the original complaint or attempts to state a cause of action that was not stated in the original complaint, the amendment is time-barred. See McCollough and the cases quoted therein. In McCollough, this Court noted that the claims asserted in the amendment arose out of the same events serving as the basis for the original complaint; that because the additional theory asserted in the amendment was based on facts that had been brought to the defendant's attention in the original complaint and would not produce any undue delay, the amendment would not work to prejudice the defendant; and that the plaintiffs had not delayed in filing the amendment. In that case, we held that the amended complaint related back to the date of the filing of the original complaint."
ConAgra, Inc. v. Adams, 638 So.2d 752, 753-54 (Ala. 1994) (emphasis added).
In this case, the plaintiffs' original March 19, 2001, complaint contained no allegations that can be said to pertain to the "conduct, transaction, or occurrence" that forms the basis of the claim related to policy number 12485788 contained in their January 22, 2002, second amended complaint. Georgia Cas. Surety Co. v. White, 582 So.2d 487, 492
(Ala. 1991) (holding that because the attempted amendment related to a transaction or occurrence *Page 983 
separate from that addressed in the original pleading, the amendment did not relate back and the claim was untimely). See also Gulf States Steel,Inc. v. White, 742 So.2d 1264 (Ala.Civ.App. 1999) (holding a claim set forth in an amended complaint was time-barred because it arose from a different fact situation than did the claim contained in the original complaint and because it introduced a new cause of action); ConAgra,Inc. v. Adams, supra (holding that the retaliatory-discharge claim in the plaintiff's amended complaint did not relate back because that claim did not arise out of the same events that formed the basis for the workers' compensation claim set forth in the plaintiff's original complaint).
The claim related to policy number 12485788, contained in the plaintiffs' January 22, 2002, second amended complaint, is based on facts and occurrences that were not pleaded or alleged in the plaintiffs' original March 19, 2001, complaint, and it "attempts to state a cause of action that was not stated in the [plaintiffs'] original complaint."ConAgra, Inc. v. Adams, 638 So.2d at 754. Given the foregoing authority, we must conclude that the plaintiffs' claim related to policy number 12485788 contained in the plaintiffs' January 22, 2002, second amended complaint does not relate back to the filing of their original complaint. Therefore, that claim is barred by the applicable two-year statute of limitations. The trial court's summary judgment in favor of Liberty National as to this issue is due to be affirmed.
AFFIRMED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs in the result.
[1] The "reasonable reliance" standard set forth in Foremost Ins. Co.v. Parham, supra, applies in this case, which was filed after March 14, 1997, the date on which Foremost was decided.
[2] The plaintiffs filed their second complaint, titled "amended complaint," on July 16, 2001, in excess of two years from May 10, 1999. Therefore, we need not address whether the plaintiffs' January 22, 2002, second amended complaint would relate back to the July 16, 2001, amended complaint.