937 So.2d 1035 (2005)
Ex parte JOHNSTON-TOMBIGBEE FURNITURE MANUFACTURING COMPANY, INC.
(In re Johnston-Tombigbee Furniture Manufacturing Company, Inc.
v.
Scott Berry).
1040393.
Supreme Court of Alabama.
October 7, 2005.
*1036 Thomas R. Jones, Jr., and Randal Kevin Davis of Davidson, Wiggins, Jones & Parsons, P.C., Tuscaloosa, for petitioner.
Isaac P. Espy of Espy, Nettles, Scogin & Brantley, P.C., Tuscaloosa, for respondent.
HARWOOD, Justice.
We granted the petition of the plaintiff Johnston-Tombigbee Furniture Manufacturing Company, Inc. ("Johnston-Tombigbee"), for a writ of certiorari to review the Court of Civil Appeals' affirmance of the trial court's summary judgments entered for Scott Berry ("Scott"). Johnston-Tombigbee Furniture Mfg. Co. v. Berry, 937 So.2d 1029 (Ala.Civ.App.2004).
Johnston-Tombigbee sued Scott on October 3, 2001, seeking to reform a deed, or, in the alternative, to quiet title to real property. On April 16, 2003, Scott filed a motion for a summary judgment. The hearing on the summary judgment motion was set for August 7, 2003, and on August 6, 2003, Johnston-Tombigbee filed a motion to amend its complaint to add claims alleging conversion of corporate property, unjust enrichment, and breaches of fiduciary duties owed to Johnston-Tombigbee. On September 8, 2003, Scott filed a motion for a summary judgment as to the claims asserted by Johnston-Tombigbee in its amended complaint. On September 10, 2003, the trial court entered a summary judgment for Scott as to Johnston-Tombigbee's claims for reformation of a deed, or, in the alternative, to quiet title, without stating a rationale. The trial court also granted Johnston-Tombigbee's motion to amend its complaint. On September 25, 2003, again without stating a rationale, the trial court entered a summary judgment for Scott on the claims alleging conversion of corporate property, unjust enrichment, and breaches of fiduciary duties asserted by Johnston-Tombigbee in its amended complaint. Johnston-Tombigbee appealed to this Court, and we transferred the case to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala.Code 1975.
Our review of the record is in accord with the facts set out in the Court of Civil Appeals' opinion:
"Reau Berry and Scott Berry are brothers. On January 7, 1988, Reau and *1037 Scott each acquired a 50% ownership interest in the stock of a corporation known as Lounora. Lounora owned Johnston-Tombigbee; therefore, by way of their ownership of Lounora, Scott and Reau each owned an equal 50% share of Johnston-Tombigbee. Scott served as the president of Johnston-Tombigbee. At the time Reau and Scott acquired ownership of the companies, Johnston-Tombigbee owned 3,000 acres of land located in Pickens County; that land was used primarily by Johnston-Tombigbee as collateral and for the generation of cash through the harvesting of timber.
"In 1989, Reau and Scott learned that 112 acres of land contiguous to the 3,000 acres was available for purchase. The 112 acres of land was owned by Beville Reagan and was known as the `Ziegler Tract.' Reau and Scott resolved to purchase the Ziegler Tract with Johnston-Tombigbee's funds. On May 31, 1989, Johnston-Tombigbee issued a check in the amount of $16,800 payable to Beville Reagan for the purchase of the Ziegler Tract; in addition, Reagan was given lifetime `coon hunting' rights to the 3,000 acres owned by Johnston-Tombigbee.
"At the time of the purchase of the Ziegler Tract, it was the intent of Reau and Scott to have the title to the property placed in their names rather than in Johnston-Tombigbee's. Scott testified in his deposition that he and Reau had intended to acquire the Ziegler Tract as a personal asset in order to `build some personal portfolio outside of the reach of the assets of Johnston-Tombigbee.' Scott further stated that Johnston-Tombigbee's funds were used for the purchase of the Ziegler Tract because in June 1988 he had taken no salary from Johnston-Tombigbee and Reau had taken a reduced salary and that they therefore agreed to have the title to the Ziegler Tract placed in their names as `more or less ... a bonus payment to [themselves].' Reau testified in his affidavit that title to the Ziegler Tract was placed in his and Scott's names individually to allow them to build a personal portfolio. However, he further stated that the property was not considered a personal asset, but rather that it was an asset of Johnston-Tombigbee. Reau also testified that the property was not intended as a bonus payment to him or Scott.
"Since the Ziegler Tract was acquired by Reau and Scott, Johnston-Tombigbee has paid taxes on the property, the property has been identified as an asset of Johnston-Tombigbee on the corporate books, and the property has been pledged by Reau and Scott as an asset of Johnston-Tombigbee for the purposes of borrowing money for Johnston-Tombigbee.
"On June 30, 2000, Reau purchased Scott's ownership interest in Lounora (and thus his ownership interest in Johnston-Tombigbee) and became the sole owner and new president of Johnston-Tombigbee. Reau contends that he and Scott intended that he would be purchasing all the assets of Johnston-Tombigbee, including the Ziegler Tract, but that Scott has refused to convey his interest in the Ziegler Tract to Johnston-Tombigbee. Scott denies that he and Reau intended that Reau would be purchasing his ownership interest in the Ziegler Tract, and he contends that his interest in the Ziegler Tract was a personal asset given to him as a bonus for taking no salary from Johnston-Tombigbee in June 1988."
937 So.2d at 1031-32.
We granted Johnston-Tombigbee's petition to address the Court of Civil Appeals' *1038 holding that Johnston-Tombigbee's amendment to its complaint asserting the claims of corporate wrongdoing did not "relate back" to the filing of the original complaint and was, therefore, barred by the statute of limitations. In support of its holding on this point, the Court of Civil Appeals stated:
"Actions by a corporation against a corporate officer for a breach of fiduciary duty and a breach of the corporate trust are governed by the two-year statute of limitations found in § 6-2-38(l), Ala.Code 1975. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). Johnston-Tombigbee contends that its claims accrued against Scott on June, 30, 2000, the date that he sold his interest in Lounora and Johnston-Tombigbee to Reau and refused to convey his interest in the Ziegler Tract. Assuming that Johnston-Tombigbee's claims accrued on June 30, 2000, its amended complaint filed on August 6, 2003, was filed after the expiration of the applicable limitations period and is, therefore, untimely unless it relates back to the date of the filing of the original complaint pursuant to Rule 15(c), Ala. R. Civ. P. Rule 15(c) provides:
"`An amendment of a pleading relates back to the date of the original pleading when
"`....
"`(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....'
"This court has stated:
"`Thus, for an amended complaint to relate back to the date of the original complaint, the claim stated in the amended complaint must have arisen from the same conduct, transaction, or occurrence set forth in the original complaint. "The relation-back doctrine of Rule 15(c) is objective, and its application, under prescribed circumstances, is nondiscretionary."
"`An amendment to a complaint, filed beyond the statutory limitations period, that alleges facts not alleged in the original complaint or that attempts to state a cause of action that was not stated in the original complaint, is time-barred. The Supreme Court of Alabama stated the test for determining whether an amendment states a new cause of action, and thus cannot relate back to the date of the original complaint, as follows:
"`"`A new cause of action is not set up by amendment where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope of the testimony.'"'
"Gulf States Steel, Inc. v. White, 742 So.2d 1264, 1267 (Ala.Civ.App.1999) (citations omitted). Additionally, this court has stated:
"`"[W]hen an amendment merely changes the legal theory of a case or merely adds an additional theory, and the new theory is based upon the same facts as the original one and those facts have been brought to the attention of the defendant, the amendment *1039 does not prejudice the defendant; we have held that such an amendment is to be taken as merely a more definite statement of the original cause of action and that it relates back to the date of the original complaint. See McCollough v. Warfield, 523 So.2d 374 (Ala.1988), and the cases quoted therein. However, this Court has also held that where the plaintiff, in an amendment filed beyond the statutory limitations period, alleges facts that were not alleged in the original complaint or attempts to state a cause of action that was not stated in the original complaint, the amendment is time-barred."'
"Carter v. Liberty Nat'l Life Ins. Co., 849 So.2d 977, 982 (Ala.Civ.App.2002), quoting ConAgra, Inc. v. Adams, 638 So.2d 752, 753-54 (Ala.1994).
"Johnston-Tombigbee alleged the following in its original complaint:
"`10. At the time of the purchase [of the Ziegler Tract], it was the intent of the parties that the purchaser of the property be [Johnston-Tombigbee]. Further, at the time of the conveyance of the original deed, dated March 24, 1989, and the correction deed, dated August 9, 1989, it was the intent of the parties that said deeds should reflect [Johnston-Tombigbee] as the grantee and title owner.
"`11. Reau Berry has executed a Quitclaim Deed in favor of [Johnston-Tombigbee], so that the public record will reflect the intent of the parties to the original conveyance. As such, Reau Berry is not a necessary party to this action.
"`12. The Deeds currently enrolled, referred to in paragraphs seven and eight, above, reflect ownership of the property by Scott Berry and Reau Berry, individually, because of the mutual mistake of the parties at the time the deed was drafted and executed.'
"Johnston-Tombigbee alleged the following in its amended complaint:
"`12. At the time of the purchase in question and the conveyance of the original deed, dated March 24, and the correction deed, dated August 9, 1989, it was the intent of the defendant and his brother, the current President of [Johnston-Tombigbee], to place legal title in their personal names. However, it was their further intent to simply build their personal portfolios by such transactions and not to necessarily consider the subject property anything other than an asset of [Johnston-Tombigbee].'
"Johnston-Tombigbee alleged in its original complaint that it was the intent of the parties to place title to the Ziegler Tract in the name of Johnston-Tombigbee and that, based on a mutual mistake of the parties, the property was titled in Scott's and Reau's names individually. However, in the amended complaint, Johnston-Tombigbee, in order to set up its claims of a breach of fiduciary duty and a breach of corporate trust, completely changed the crucial factual allegation to allege that it was the actual intent of Scott and Reau to place title to the Ziegler Tract in their names in order to build their personal portfolios. Because Johnston-Tombigbee completely changed the factual allegations to allege facts in its amended complaint that were not alleged in its original complaint, we conclude that the claims alleged in the amended complaint do not relate back to the date of the original complaint and, therefore, are barred by the applicable statute of limitations."
937 So.2d at 1032-34.
Judge Murdock dissented, stating:

*1040 "As the main opinion notes (albeit without the same emphasis as is supplied below), this court has stated:
"`The Supreme Court of Alabama stated the test for determining whether an amendment states a new cause of action, and thus cannot relate back to the date of the original complaint, as follows:
"`"`A new cause of action is not set up by amendment where the same substantial facts are pleaded merely in a different form, so that a recovery on either count of the complaint would bar a recovery on the other. As long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope of the testimony.'"'
"Gulf States Steel, Inc. v. White, 742 So.2d 1264, 1267 (Ala.Civ.App.1999) (citations omitted) (emphasis added).
"In this case, the allegations in both the original complaint and the amended complaint address the same `injury' and the same `matter' or `subject of controversy.' In both, Johnston-Tombigbee alleges that it should have the benefit of certain real property. In the original complaint, Johnston-Tombigbee sought a reformation of the deed to the real property, which it claims mistakenly names Reau Berry and his brother Scott Berry (rather than the corporation) as grantees, or, in the alternative, to quiet title to the real property in the corporation. In the amended complaint, Johnston-Tombigbee asserts that Scott Berry's retention of title in himself, rather than in the corporation, constitutes a conversion of corporate assets, a breach of a corporate fiduciary duty, usurpation of corporate opportunity, self-dealing, and a waste of corporate assets. I believe the different claims, or legal theories, set forth in the amended complaint are not complaining of any different `injury' or `subject of controversy' than is alleged in the original complaint. Instead, the same matter is simply `differently laid.' See also Kaufmann & Assocs., Inc. v. Davis, 908 So.2d 246, 254 (Ala.Civ.App.2004) (Murdock, J., dissenting as to denial of application for rehearing) (discussing meaning of separate causes of action for purposes of res judicata)."
937 So.2d at 1034-35.
Johnston-Tombigbee's argument in its petition essentially echoes Judge Murdock's dissent. This position focuses on the point that the claims asserted in the amended complaint "have arisen from the same conduct, transaction, or occurrence set forth in the original complaint," i.e., the transaction by which the parties in this case acquired their interest in the Ziegler tract. Rule 15(c), Ala. R. Civ. P. However, the Court of Civil Appeals correctly observed that Johnston-Tombigbee's amended complaint does present a different fact, i.e., the intent of the parties to take the title to the Ziegler tract in their individual names rather than to have the title to the property placed in the name of Johnston-Tombigbee, as was alleged in the original complaint. Moreover, that fact is a necessary component of the claims added by Johnston-Tombigbee in its amended complaint. Further, although Johnston-Tombigbee's complaint originally asserted claims based upon the deed, i.e., ex contractu,[1] *1041 the claims asserted in the amended complaint are tort claims asserting improper conduct by Scott.
Accordingly, we turn to case authority concerning the relation-back doctrine and its consideration of when different factual allegations in an amended complaint result in such changes to the original theory of the case as to defeat the application of the relation-back doctrine. In ALFA Mutual Insurance Co. v. Smith, 540 So.2d 691 (Ala.1988), this Court considered an appeal by ALFA Mutual Insurance Company of a judgment entered on a verdict against it in the amount of $75,000 based on claims alleging breach of contract and bad-faith refusal to pay benefits. Among the issues considered by the Court was whether the bad-faith claim, added after the Court of Civil Appeals reversed the judgment entered on the original verdict on a breach-of-contract claim and remanded the cause, could "relate back" to the timely filed original complaint. The Court stated:
"Our next question is whether that claim is barred by the statute of limitations or whether it relates back to Smith's original complaint, under Rule 15(c), [Ala.]R.Civ.P. The other recent case alluded to in this opinion, McCollough v. Warfield, 523 So.2d 374 (Ala. 1988), involved an original complaint filed on February 19, 1985, for breach of a contract signed January 20, 1984. The McCulloughs filed an amended complaint on November 26, 1986, alleging fraud, which the trial court held was barred by the statute of limitations. In reversing the trial court's disallowance of the amendment in [Ex parte Insurance Company of North America (Citizensbank of Thomasville v. Insurance Company of North America), 523 So.2d 1064 (Ala.1988)], we cited McClendon v. City of Boaz, 395 So.2d 21, 26 (Ala.1981):
"`"That the amendment adds a new theory or revamps the format of the complaint is immaterial. When a new theory of liability is based upon the same facts and those facts have been brought to the attention of the opposite party by previous pleading, no prejudice is worked by allowing the amendment."'
"523 So.2d at 375."
540 So.2d at 694 (footnote omitted; emphasis added). In Smith, the Court found that the bad-faith claim was not based upon any fact not presented in the original complaint and held that the amendment did relate back to the filing of the original complaint and was therefore not time-barred. We note that the amendment in Smith added a tort  bad-faith refusal to pay benefits  to the original breach-of-contract action.
In McCollough v. Warfield, 523 So.2d 374 (Ala.1988), the case referenced above in Smith, the plaintiffs sought to amend a complaint alleging breach of contract to add a fraud claim. As in Smith, the amendment was filed after the limitations period had lapsed; the trial court declined to permit the amendment and held that the fraud claim was barred. On appeal, the Court discussed two earlier cases and the effect of the possibility of prejudice to the defendant as a result of allowing the amendment.
"In Bracy v. Sippial Electric Co., 379 So.2d 582 (Ala.1980), the Court dealt with the situation where the plaintiff was attempting to amend his contract action by adding a fraud count. In dealing with the issue of whether the fraud count should relate back to the original complaint, the Court stated:

*1042 "`It is obvious from the amendment that Sippial was going to attempt to prove its fraud allegation with facts previously pled and with the terms of the subcontract. The fraud count was merely an additional cause of action. Where an amendment merely changes the legal theory of a case or adds an additional theory, but the new or additional theory is based upon the same set of facts and those facts have been brought to the attention of the other party by a previous pleading, no prejudice is worked upon the other party.... We cannot say that Bracy suffered actual prejudice or that the trial would be unduly delayed by allowing the amendment; the court, therefore, did not abuse its discretion in allowing it.'
"Bracy v. Sippial Electric Co., 379 So.2d at 584.
"In McElrath v. Consolidated Pipe & Supply Co., 351 So.2d 560 (Ala.1977), this Court wrote:
"`"Under this rule [15] leave to amend pleadings should be granted freely when justice so requires and the adverse party will not be prejudiced thereby, to clarify the issues and expedite the disposition of litigation...." (footnotes omitted) [quoting 1A Barron and Holtzoff, Federal Practice & Procedure, § 442 comments; emphasis added in McElrath].
"`....
"`"Prejudice may be found, however, where the amendment will cause excessive delay or where a source of evidence has become unavailable or a statute of limitations would bar a new suit if the opposing party should lose the present action ...." (footnotes omitted) [quoting 1A Barron and Holtzoff, Federal Practice & Procedure, § 442 comments; emphasis added in McElrath].'
"351 So.2d at 564-65. The Court also wrote:
"`"Our survey of the cases interpreting rule 15(a) has not persuaded us that a finding of prejudice to the opposing party, although dispositive when present, is the only factor justifying a refusal to permit a change in theory.... As we see it, a shift in theory should be denied, even in the absence of prejudice, where the party seeking to interpose it has been guilty of flagrant abuse, bad faith, or truly inordinate and unexplained delay. However, in the absence of these factors the question of prejudice should be the touchstone of the determination whether to permit the amendment. (footnote omitted [in McElrath].) Moreover, in approaching that question, we believe that we must view the [notion] of prejudice broadly ..." [quoting Matlack, Inc. v. Hupp Corp., 57 F.R.D. 151 (E.D.Pa.1972); emphasis added in McElrath].'
"McElrath v. Consolidated Pipe & Supply Co., 351 So.2d at 564-65."
523 So.2d at 375-76. The Court in McCollough then concluded that, because the claims asserted in the amended complaint arose out of the same events and the same "set of facts" that were presented in the original complaint, the defendant had suffered no prejudice by the amendment. The Court then held that the amendment related back to the filing of the original complaint and was therefore not time-barred.
The holdings in Smith and McCollough strongly imply that amendments that advance distinct legal theories, such as a tort when the original claim arose in contract, can relate back to the filing date of the complaint whenever the amendment is *1043 based upon the same set of facts presented in the original complaint. An example of a case in which the amendment was held not to relate back is ConAgra, Inc. v. Adams, 638 So.2d 752 (Ala.1994), in which a plaintiff who originally sought workers' compensation benefits later sought to amend his complaint to allege retaliatory discharge. After the discussion quoted by the Court of Civil Appeals in its majority opinion in this case, the Court in ConAgra stated:
"In this case, however, the claims asserted in Adams's amended complaint do not arise out of the same events as those claims asserted in the original complaint. Specifically, the original complaint merely alleges that Adams was injured while working within the line and scope of his employment with ConAgra and that ConAgra had denied him workers' compensation benefits. The record reveals that Adams was terminated by ConAgra in October 1987, before he filed his complaint for workers compensation benefits; therefore, when he filed the original complaint, Adams had notice of the facts giving rise to the retaliatory discharge claim, yet he did not file his amended complaint alleging retaliatory discharge until May 1991. The retaliatory discharge theory asserted in the amended complaint was not based on facts that had been brought to ConAgra's attention in the original complaint."
638 So.2d at 754. Thus, an implied consideration in ConAgra, as in Smith and McCollough, supra, is the concept of prejudice to the defendant, i.e., whether the original complaint provided the defendant with a sufficient factual basis from which he or she could reasonably anticipate the claims presented in the amendment.
This analysis comports with the discussion by the Court in Sonnier v. Talley, 806 So.2d 381 (Ala.2001)("Sonnier II"). In that case, the Court considered Talley's medical-malpractice claim against Dr. Sonnier. Talley's original complaint set out medical-malpractice claims, asserting that various health-care providers, including Dr. Sonnier, had caused her to undergo an unnecessary hysterectomy. She later amended her complaint to add claims asserting that, subsequent to the surgical procedure, Dr. Sonnier had misrepresented to her various facts concerning the necessity for the procedure and her continuing health. Talley appealed a summary judgment entered for Dr. Sonnier; this Court determined that, although Talley's claims based on the surgical procedure were barred by the four-year limitations period for medical-malpractice actions, her claims alleging misrepresentations made following the surgery constituted separate acts of malpractice, which were not time-barred. Ex parte Sonnier, 707 So.2d 635 (Ala. 1997). Accordingly, this Court remanded the cause for further proceedings in the trial court. On remand, Dr. Sonnier filed a motion for a summary judgment, arguing, among other things, that the misrepresentation claims in the amended complaint involved separate and distinct facts that could not relate back to the facts alleged in the original complaint. The trial court denied Dr. Sonnier's motion for a summary judgment and, pursuant to Rule 5, Ala.R.App.P., certified that the issue presented a controlling issue of law to allow Dr. Sonnier to seek a permissive appeal, which he did. See Sonnier II. Dr. Sonnier argued, among other things, that this Court had determined in Ex parte Sonnier that all of Talley's claims were time-barred and, in addition, that Talley's misrepresentation claims were separate and distinct from the claims asserting that Dr. Sonnier had performed an unnecessary hysterectomy and thus *1044 could not relate back to the filing date of the original complaint. Dr. Sonnier's argument, therefore, asserted that the misrepresentation claims were barred by the expiration of the limitations period. In its discussion of the relation-back issue, the Court in Sonnier II first noted:
"[Ex parte Sonnier] did not hold that all of the claims asserted in the Talleys' original complaint were time barred. Rather, the [Ex parte Sonnier] Court specifically held that Talley's claims relating to the hysterectomy itself and any claims arising out of events or actions preceding the date of that surgery were time barred. However, this Court also expressly held that `the Talleys timely filed the complaint with respect to the misrepresentations Mrs. Talley says the doctors made subsequent to the surgery.' [Ex parte Sonnier], 707 So.2d at 638 (emphasis added). Moreover, this Court reviewed the record before it and found substantial evidence supporting the Talleys' allegations of malpractice (i.e., the misrepresentations). Thus, the [Ex parte Sonnier] Court held that the trial court erred in entering a summary judgment for the defendant doctors on Talley's misrepresentation claims on the basis of the statute of limitations."
806 So.2d at 386. However, the Court also stated:
"[T]his analysis does not completely resolve the question whether Talley's later-filed misrepresentation claims may relate back to the date of her original complaint. Rule 15(c), Ala. R. Civ. P., which allows relation back of amendments, states in pertinent part: `An amendment of a pleading relates back to the date of the original pleading when... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....' Regarding Rule 15(c), this Court has quoted the following with approval:
"`"Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all of the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim. Similarly, while it is still the rule that an amendment which states an entirely new claim for relief based on different facts will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specific factual details such as time and place, as well as other items, will relate back.
"`"The [Alabama Rules of Civil Procedure] have broadened the meaning of the concept of `cause of action,' shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim. And an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back. Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed, or adds additional grounds of negligence, changes the theory of the action *1045 from one based on contract to one sounding in tort, changes a demand for equitable relief to one for legal relief, states a different fulfillment of conditions precedent, or increases the amount of damages claimed."'
"National Distillers & Chem. Corp. v. American Laubscher Corp., 338 So.2d 1269, 1273-74 (Ala.1976), quoting 3 James W. Moore et al., Moore's Federal Practice and Procedure, ¶ 15.15[3], pp. 1025-31 (1968 ed.) (emphasis added).
"Talley's original complaint contained three counts, the first of which was a general count alleging negligence and malpractice against Dr. Sonnier in regard to his rendering medical care and treatment to Talley from June 1990 through, and including, October 1991. Thus, Talley alleged general negligence and malpractice in her original complaint arising out of and related to Dr. Sonnier's medical treatment of her during the period specified therein. This period included the months following Talley's surgery.
"In her amended complaint, Talley restated the allegations contained in her original complaint and added allegations that, during the months following her surgery, Dr. Sonnier and Dr. van der Meer [a codefendant] made misrepresentations of fact regarding her purported cancer, the need she was supposed to have had for a hysterectomy, and the need for her to return for medical care to avoid a recurrence of cancer. Thus, Talley's amended complaint may be construed to state claims of negligence and malpractice arising out of, and related to, the medical care provided to her after the surgery.
"As recognized in National Distillers, supra (quoting Moore's Federal Practice), `"an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, ... will relate back even though the statute of limitations has run in the interim."' 338 So.2d at 1273. Because the allegations of Talley's original complaint gave Dr. Sonnier fair notice of the general fact situation out of which her allegations of misrepresentation arise, her misrepresentation claims relate back to the date the original complaint was filed."
806 So.2d at 386-87.
When we examine the instant case in light of Sonnier II and its predecessors discussing the relation-back doctrine found in Rule 15(c), Ala. R. Civ. P., as permitting relation back when the amendment arises out of the same transaction or occurrence so long as the amendment does not prejudice the party in opposition, we focus on the nature of the transaction or occurrence. In this case, the occurrence was the transfer of title of the Ziegler tract. Throughout its pleadings, Johnston-Tombigbee has acknowledged that the title to the Ziegler tract was placed in Reau and Scott's names. The original complaint alleged that placing title in Reau and Scott's names was a mistake and that
"`[a]t the time of the purchase [of the Ziegler Tract], it was the intent of the parties that the purchaser of the property be [Johnston-Tombigbee]. Further, at the time of the conveyance of the original deed, dated March 24, 1989, and the correction deed, dated August 9, 1989, it was the intent of the parties that said deeds should reflect [Johnston-Tombigbee] as the grantee and title owner.'"
937 So.2d at 1033. Later, Reau testified in his deposition that the parties intended to place the title to the Ziegler tract in their individual names. In opposition to Scott's *1046 motion for a summary judgment, Reau sought to amend the complaint to assert:
"At the time of the purchase in question and the conveyance of the original deed, dated March 24, and the correction deed, dated August 9, 1989, it was the intent of the defendant and his brother, the current President of [Johnston-Tombigbee], to place legal title in their personal names. However, it was their further intent to simply build their personal portfolios by such transactions and not to necessarily consider the subject property anything other than an asset of [Johnston-Tombigbee]."
Thus, the nature of the relief sought, that title to the Ziegler tract be vested in Johnston-Tombigbee, has not changed. Also unchanged are the facts of the occurrence that gave rise to Johnston-Tombigbee's claim, i.e., the purchase of the Ziegler tract. The only new allegation in Johnston-Tombigbee's amended complaint regards the allegation that the intent of the parties was that title to the Ziegler tract be vested in Johnston-Tombigbee as a corporate asset. Our caselaw, as shown by Sonnier II, ConAgra, Smith, and McCollough, does permit a claim based on a new cause of action added in an amendment to relate back to the filing of the original claim under Rule 15(c), even when the cause of action underlying the claim added by the amendment is as distinct from the original cause as causes sounding in contract are distinct from causes sounding in tort, so long as the "`original pleading gives fair notice of the general fact situation out of which the claim or defense arises.'" Sonnier II, 806 So.2d at 386-87 (quoting National Distillers & Chem. Corp., supra, 338 So.2d at 1273).
With respect to the concept of prejudice that is implied in the relation-back doctrine, we first note that in this context the concept of prejudice does not include the possibility of exposure to additional liability as a result of new claims or legal theories for recovery added in the amendment. This Court has explicitly stated that "when an amendment merely changes the legal theory of a case or merely adds an additional theory, and the new theory is based upon the same facts as the original one and those facts have been brought to the attention of the defendant, the amendment does not prejudice the defendant. . ." ConAgra, 638 So.2d at 753. See also Whitfield v. Murphy, 475 So.2d 480 (Ala.1985)(addition of mother's false-imprisonment claim by amendment in daughter's action also claiming false imprisonment related back to the date of the filing of the daughter's action and did not prejudice the defendants because the mother's claim arose out of the same transaction or occurrence as the daughter's claim), and Carter, supra. Thus, the addition of new claims by amendment in Sonnier II, ConAgra, Smith, and McCollough, which added new theories of liability, did not constitute prejudice, even when those new theories raise the possibility of different and additional compensatory damages, as well as the possible liability for punitive damages raised by the addition of the new tort claims asserted in Smith and McCollough. Rather, the concept of prejudice in the relation-back cases concerns the ability of the respondent to the amendment to defend against the claims that arise from the amendment. The factors that might constitute prejudice in this context were noted in McElrath v. Consolidated Pipe & Supply Co., 351 So.2d 560, 565 (Ala.1977): "`[W]here the amendment will cause excessive delay or where a source of evidence has become unavailable or a statute of limitations would bar a new suit if the opposing party should lose the present action.'" (Quoting 1A Barron and Holtzoff, Federal Practice and Procedure, § 446 comments.)
*1047 In considering whether Scott would be prejudiced if Johnston-Tombigbee's amendment is allowed, we note that it is apparent that the evidence relevant to the parties' intent in the occurrence that gave rise to this casethe acquisition of the Ziegler tractis equally available to both Reau and Scott. Scott argues no prejudice resulting from the loss of any evidence with respect to this allegation, nor does the allegation raise the likelihood of excessive delay. Scott, as the defendant, is not concerned about the possible loss of a cause of action because of the expiration of a limitations period. McElrath, supra. The briefs of the parties do not demonstrate any other instance of prejudice that might arise from permitting Johnston-Tombigbee's amendment to relate back.
Accordingly, we conclude that the Court of Civil Appeals erred in determining that Johnston-Tombigbee's amended complaint could not relate back to the filing date of its original complaint under Rule 15(c), Ala. R. Civ. P. It follows that we must reverse the judgment of that court and remand the cause with instructions for that court to consider further those arguments advanced by Scott that the summary judgment must be affirmed even in the event that the claims in Johnston-Tombigbee's amended complaint relate back to the date of the filing of the original complaint.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
BOLIN, J., dissents.
BOLIN, Justice (dissenting).
Because I believe that Johnston-Tombigbee in its amended complaint completely changed the factual allegations to allege facts that were not alleged in its original complaint, I believe that the claims alleged in the amended complaint do not relate back to the date of the filing of the original complaint and that they are, therefore, barred by the applicable statute of limitations. See Gulf States Steel, Inc. v. White, 742 So.2d 1264 (Ala.Civ.App.1999). Accordingly, I must respectfully dissent from the main opinion.
NOTES
[1] "Arising from a contract." Black's Law Dictionary 608 (8th ed.2004).