Appeals by Milton F. Lee and Suzannah S. Lee, plaintiffs, from summary judgments entered against them in their action based upon fraud and deceit in the sale of a house. We affirm.
Genny Loftin, the owner of the house in question, had listed the house with Loftin Realty Company, which was owned by her father, Jeff Loftin. Loftin Realty Company in turn listed the house with Multiple Listing Service, describing the condition of the house as "excellent." Sometime in late March 1979 the plaintiffs, as prospective purchasers, were shown the house for sale by Carol Zoglmann, a realtor in Dothan employed by Morrow Realtors. Plaintiffs inspected the inside and outside of the house. They observed a "settlement crack" on the outside and also some missing sheetrock in a hallway closet. Milton Lee found a patched-over piece of wallboard in a bathroom and a mortar joint crack in a hall closet where the sheetrock had been cut away.
With the assistance of Ms. Zoglmann, Lee applied to United Federal Savings and Loan Association (United Federal), which already owned a first mortgage, for a second mortgage. Mr. Billy Lane of United Federal telephoned Ms. Zoglmann several days later and asked if she was aware of settling cracks in the home. When this information was relayed to Mr. Lee, he replied that he would make an inspection before closing.
Mr. Lee made a second examination of the house on the day of closing and found *Page 133 
some roof shingles which he considered objectionable. Lee obtained a reduction of $500 on the price of the house on account of this roof problem. Thereupon, Mr. and Mrs. Lee executed the following statement:
 "I have inspected the property at 202 Lakewood Drive I am purchasing from Morrow Realtors and I am aware of the cracks in the brick of the home between kitchen and bedroom level front and rear of home and in the interior. I accept the home based on my own inspection of the property."
Shortly thereafter, the Lees purchased the house, closed the transfer of the first mortgage, and secured the second mortgage money from United Federal. The Lees then moved into the house.
Several months later, in March 1981, the Lees learned of other problems in the house and went to United Federal concerning them. Mr. Lee was referred to the firm of Wright and Rose for an inspection. That firm reported to Lee that the foundation was cracked across the house, the upstairs was separated from the downstairs, the outside trim had separated from the brickwork, the bath and shower had separated from the wall, and other problems.
Ultimately, the Lees brought this action based upon fraud. Count One alleged a cause of action for fraudulent misrepresentation and deceit against United Federal, Elizabeth L. Stephens a/k/a Genny Loftin, Jeff Loftin, and Loftin Gallery of Homes[1] in the sale of the house. Count Two alleged a cause of action in fraud and fraud by concealment in the sale.
The defendants responded with pre-trial motions and answers. In due course, the defendants filed motions for summary judgment based upon the pleadings, an affidavit of Carol Zoglmann, the Lees' statement (quoted above), and the depositions of George Talley, Charles Williams, Billy Lane, Charles Northcutt, Genny Loftin, Jeff Loftin, Suzannah S. Lee, and Milton F. Lee. Plaintiffs opposed the motions with, essentially, the same materials. After hearings, the trial court granted the defendants' motions for summary judgment. The plaintiffs' motions for reconsideration were denied and these appeals followed.
The first question is whether the trial court correctly granted summary judgment in favor of United Federal on the claim of fraudulent misrepresentations. Plaintiffs' allegations were that United Federal misrepresented the condition of the house, representing that it was in excellent condition and not structurally unsound.
In Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala. 1981), this Court stated that a party making a claim for misrepresentation must establish (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff, (4) who was damaged as a proximate result.
In the material before the trial court, there was no evidence of any misrepresentation of a material fact which induced the plaintiffs to purchase the house. Suzannah Lee never talked with anyone at United Federal; Milton Lee deposed that he had never talked to anyone at United Federal except Billy Lane and Joyce Bedsole, employees of United Federal; neither of them made any representations to him concerning the house, and he did not rely on anything those persons said in his purchase of the home. There having been no evidence of either a misrepresentation by United Federal or of reliance by the plaintiffs, there was no question of fact on the issue of misrepresentation and, as a matter of law, plaintiffs could not recover thereon.
The next question is whether or not the trial court erred in granting summary judgment to United Federal on the issue of fraudulent concealment, i.e. suppression of material facts.
Code of 1975, § 6-5-102, states:
 "Suppression of a material fact which the party is under an obligation to communicate *Page 134 
constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Plaintiffs have presented a number of circumstances which indicate knowledge of deficiencies in the house on the part of United Federal: a prior lawsuit, apparently a divorce action, which resulted in a former owner's indebtedness to United Federal being cancelled and United Federal's obtaining a deed to the house; knowledge of these facts and of defects then existing on the part of Charles Williams and Billy Lane, employees of United Federal; the fact that Mr. Lee was refused homeowner's insurance coverage by United Insurance, whose office is in the United Federal building; the fact that Billy Lane, at the time of the instant closing, asked Mr. Lee if he was aware that the house had some problems, without disclosing those problems; the fact that George Talley, a United Federal agent, in a discussion with Betty Salter, a Farm Bureau agent, stated that possibly he could have told Salter that the house should never have been mortgaged; the fact that George Talley had knowledge of defects in the house prior to the time the Lees purchased it; and the fact that Charles Williams and others had inspected the house for United Federal when some former owners, the Sloanes, had obtained a loan on it, and knew that the Sloanes were involved in a lawsuit concerning the condition of the house.
All of these circumstances, according to plaintiffs, created a confidential relationship, or special circumstances between the parties, under which the law imposed a duty upon United Federal to disclose all material information it possessed about the condition of the house.
Nevertheless, the plaintiffs presented no evidence that United Federal was ever requested to furnish any information to them, or that United Federal actively concealed any knowledge from them. Under the facts presented, there is an absence of any inference that United Federal induced the Lees to purchase the house or that the Lees purchased it as a result of some nondisclosure.
Moreover, the mere lending of money on a house by a financial institution, albeit one with knowledge of deficiencies in the house, does not create a confidential relationship, or other circumstances imposing a duty to disclose information at the lender's disposal. Under the facts before the trial court, there was no evidence of any such duty. As was stated inChapman v. Rivers Construction Company, 284 Ala. 633,227 So.2d 403 (1969), in connection with the suppression statute:
 "§ 109 [now § 6-5-102] is declaratory of the common law. In dealings between persons standing in confidential relations, the law imposes an obligation on one party to safeguard the interests of the other party with the same fidelity with which he safeguards his own. Withholding facts, material to be known, is a breach of such legal duty, regardless of intent to deceive, and is a legal fraud. When the circumstances of the particular case impose a like duty, the same rule obtains. So reads the statute. In the absence of confidential relations, or special circumstances imposing a like duty, the rule seems settled that nondisclosure of facts to be fraudulent must be for purposes of deceit. [Citations omitted.]"
284 Ala. 640, 227 So.2d 410.
We decline to recognize any such duty between United Federal and the Lees under the facts presented, which indicate to us an arm's length transaction. Absent a confidential relationship, "no duty to disclose exists when information is not requested and . . . mere silence is then not a fraud." Collier v. Brown,285 Ala. 40, 44, 228 So.2d 800, 802 (1969). See also Cooper Company v. Bryant, 440 So.2d 1016 (Ala. 1983).
Furthermore, there is no evidence of deceit, as defined by §6-5-104, on the part of United Federal, i.e., no suggestion of an untrue fact, no assertion of an untrue fact, no suppression of a true fact, and no promise made without an intention to perform. *Page 135 
We conclude, therefore, that the trial court did not err in granting summary judgment for United Federal on the theory of concealment.
The next question is whether the trial court erred in granting summary judgment in favor of Genny Loftin and Jeff Loftin on the misrepresentation and concealment counts.
From the facts before the trial court, it appears that the only "statement" alleged by plaintiffs to have been false is the Multiple Listing Service notation characterizing the house as being in "excellent" condition. The facts, however, are devoid of suggestion that this description was anything but a seller's opinion, or advertising "puff." A similar situation was presented in Harrell v. Dodson, 398 So.2d 272 (Ala. 1981), where there was a multiple listing book notation indicating the condition of a house as "exc.," allegedly meaning excellent. We observed:
 "There is no evidence the notation was pointed out to the Harrells in answer to some specific question. In fact, there is no evidence to provide a basis for attaching to that representation an implied underlying representation of material fact that the house was in excellent condition justifying reliance upon it as such rather than merely an opinion to the same effect. We therefore conclude the Harrells failed to adduce sufficient evidence to support a cause of action for misrepresentation or fraud based upon the notation in the multiple listing book." 398 So.2d at 276.
Likewise, there was no evidence presented in this case that the listing in question was presented to either of the Lees as a representation or even called to their attention. To the contrary, both plaintiffs concede that they never spoke to Jeff Loftin regarding their purchase. Genny Loftin was eating lunch at the house on the occasion of the Lees' first inspection. Her connection with the Lees was described by Mrs. Lee's testimony on deposition:
 "Q. Well, did she appear to be holding anything back?
"A. She answered me when I asked her questions.
"Q. You didn't question the answers, did you?
"A. No.
 "Q. Did you ask her about the construction of the house?
"A. No.
"Q. Did you ask anybody about it?
"A. No, I didn't.
 "Q. Did you ask anybody about the walls or the floors or anything else?
"A. No, I didn't."
Genny Loftin, the owner, testified that she herself typed the description that went into the multiple listing statement, and that in her opinion the house was in excellent condition. Nothing in the evidence countered the fact that the description in the listing was anything more than the opinion of the owner.
Plaintiffs concede that there were no other representations made to them by either Genny Loftin or Jeff Loftin. Accordingly, summary judgment was properly granted in favor of these defendants.
Was there a scintilla of evidence that these same defendants concealed the defects in the house from the Lees? Under such an allegation, this Court has stated in Harrell v. Dodson, supra, at 276:
 "Respecting the issue of fraudulent concealment under Code 1975, §§ 6-5-102 and 6-5-104, one charged with that act or acts, must either be under an obligation to communicate either by virtue of the existence of a confidential relationship, or from the particular circumstances of the case, or must knowingly conceal a material fact with intent to deceive. . . . As a matter of law, one can only be liable for concealing facts of which one has knowledge. Brasher v. First National Bank of Birmingham, 232 Ala. 340, 168 So. 42 (1936)."
Genny Loftin testified that she knew nothing about the defects in the house complained of by the plaintiffs, and Milton Lee himself deposed that he did not know what *Page 136 
Genny Loftin knew. Jeff Loftin testified that he did not know of any of the defects. Not only was nothing offered in opposition to this evidence, but the plaintiffs themselves testified that the defects about which they complained were not evident to them on the occasions of their own inspections. In fact, it was after plaintiffs had lived in the house for about 15 months that they became aware of the deficiencies, and only then after an engineer had examined the house. Moreover, the mere fact that Genny Loftin had lived in the house for one and one-half years does not give rise to a reasonable inference that she knew of the defects later complained of by the Lees. Nor does the fact that Jeff Loftin had handled a sale of this house on one occasion in the past. Cf. Harrell v. Dodson, supra
(repairs made by seller over a year before house was sold held not to create reasonable inference of concealment); accord,Blankenship v. Ogle, 418 So.2d 126 (Ala.Civ.App. 1982).
Finally, we must observe that Jeff Loftin, d/b/a Loftin Realty Company, was the listing agent, not the selling agent, in connection with the sale. The evidence discloses that Jeff Loftin did not participate in this sale and did not talk with plaintiffs. There was, in short, no evidence of any confidential relationship between Jeff Loftin and plaintiffs which would have created a duty on Loftin's part in connection with the condition of the house. In that regard, Cooper Company v. Bryant, 440 So.2d 1016 (Ala. 1983), is instructive at 1018-19:
 "Agency is normally a question of fact to be determined by the jury. Cashion [v. Ahmadi], 345 So.2d [268], 271 [Ala. 1977]. In the case at bar, however, there is not even a scintilla of evidence that Cooper, the listing realtor (and the only one who knew or might have known about the crack in the bathroom floor), was the agent of the Bryants. Cooper had been retained by the sellers and played no part in bringing the Bryants to the house. There were no direct dealings between the Bryants and Cooper.
 "Additionally, there was no `inequality of condition and knowledge, or other attendant circumstances' which would have obligated Cooper to speak. Marshall [v. Crocker], 387 So.2d [176], 179 [Ala. 1980]. The record clearly shows that the Bryants had several opportunities to inspect the premises and inquire about its condition. At the time, Mr. Bryant was employed by a company that tested ground conditions and structural qualities, and he knew of the importance of a good building foundation. We cannot hold, under these facts, that Cooper had a legal duty to communicate with the Bryants about the house.
 "Cottage Hill, being the realtor that did bring the Bryants to the house, may have been obligated to disclose defects in the house, but there was no evidence that it had any knowledge of any problems. `As a matter of law, one can only be liable for concealing facts of which one has knowledge.' Harrell [v. Dodson], 398 So.2d [272], 276 [Ala. 1981]."
In this case, a different realtor, not a party to this action, brought the purchasers to this house. And, insofar as any "inequality of condition" may be considered, the record is absent of any suggestion of advantage taken by either Genny Loftin or Jeff Loftin of the Lees. It appears that the Lees had the opportunity to inspect the house, and did so on two occasions, and that their decision to purchase the house was based upon their inspections. They both, in fact, executed a statement to that effect.
For those reasons, the trial court did not err in granting summary judgment to these defendants on the concealment count.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] While some portions of the record refer to Loftin Gallery of Homes and another company, Loftin Realty Company, as separate defendants, we understand that these are both names under which the defendant Jeff Loftin does business. *Page 137