[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1271 
 ON APPLICATION FOR REHEARING
The Court's original opinion dated March 15, 1991, is withdrawn and the following is substituted therefor.
David and Patricia Keith sued Witt Auto Sales, Inc. ("Witt"), alleging negligence, fraud, conversion, and conspiracy; they sued Hartford Insurance Company of Connecticut ("Hartford"), alleging negligence, fraud, conversion, and conspiracy; they sued Robert D. Henry, a representative of Hartford, alleging negligence; and they sued David A. Blackmon, a representative of Hartford and Henry's supervisor, alleging negligence, conversion, and conspiracy. The trial court granted Witt's motion for summary judgment on the conspiracy claim against it and granted Hartford and Blackmon's motions for summary judgment on all claims against them except those for negligence. There remain claims of negligence against all defendants and claims of fraud and conversion against Witt. The trial court entered Rule 54(b), A.R.Civ.P., orders making the summary judgments final. The Keiths filed separate appeals from the two judgments. The appeals have been consolidated for purposes of writing this opinion. We affirm.
This suit was filed before June 11, 1987; therefore, the "scintilla of evidence" rule is applicable. Ala. Code 1975, § 12-21-12. In accordance with our standard of review, we must view the evidence in the light most favorable to the Keiths (the non-movants) and resolve all reasonable doubts against Hartford, Witt, and Blackmon (the movants). Sandersv. Kirkland Co., 510 So.2d 138 (Ala. 1987).
On March 13, 1987, the Keiths were involved in an automobile collision with Russell J. Bueger near Crivitz, Wisconsin. Bueger was insured by Hartford. After the accident, Mr. Keith signed an authorization to repair his automobile, which he said he believed was simply an authorization form to have his car towed and secured at the Witt dealership in Crivitz, Wisconsin.
The Keiths returned to their home in Birmingham in an automobile that they had rented from Witt. Within a week of the accident, Hartford sent Henry to the Keiths' home to discuss the collision, at which time Henry assured Mr. Keith that "Hartford would take care of everything." There was no discussion about whether the automobile would be "totalled" or repaired and, if repaired, where the repairs would be made. Sometime later, Henry told Mr. Keith that, in all probability, the automobile would be totalled. Mr. Keith had no objection to the automobile being totalled, if he received what he thought was a fair amount for it.
Several weeks later, after talking with Blackmon, who was Henry's supervisor, Henry told Mr. Keith that Hartford could not afford to total the automobile. At that time, Mr. Keith told Henry that they (the Keiths) did not want to have their car repaired in Crivitz, Wisconsin. Henry then told the Keiths that their automobile would be repaired but that Hartford would load the automobile on a flat-bed truck and transport it to Alabama for the repairs. This conversation between Henry and the Keiths occurred several days subsequent to Hartford's reaching an agreement with Witt on the estimated amount Witt would charge to repair the automobile and subsequent *Page 1272 
to Hartford's becoming aware that Witt had already begun those repairs. Mr. Keith contends that although his signature is on the authorization form,[1] he never read the form but simply took the word of someone at the scene of the collision that it was only an authorization to tow his car.
Nonetheless, Witt completed the repairs and after much discussion about how to return the Keiths' repaired automobile to the Keiths and how to return Witt's rental vehicle to Witt, two Witt employees drove the Keiths' automobile to Birmingham in order to deliver it to the Keiths, to retrieve the rented automobile, and to obtain payment for repairs. In order to pay for the repairs, Hartford had issued the Keiths a check payable to the Keiths and Witt. Upon the arrival of Witt's employees in Birmingham, the Keiths did not inspect their vehicle and were instructed by counsel not to, and they did not, endorse the check or give it to Witt's employees. Because Witt did not receive payment, Witt's employees drove both the rental automobile and the Keiths' automobile back to Crivitz, Wisconsin.
The Keiths argue that there was a scintilla of evidence that Hartford made fraudulent promises to, and fraudulently withheld material information from, the Keiths and that that scintilla precluded the entry of a summary judgment on Hartford's behalf. We disagree.
 "In order for one to succeed on a fraud claim, he must establish that a false representation of a material . . . fact was made, that he detrimentally relied upon it, and that he was damaged as a proximate result. Earnest v. Pritchett-Moore, Inc., 401 So.2d 752
(Ala. 1981). If the fraud claim is based upon a promise to perform a future act, the party must also prove that the promisor, at the time of the alleged misrepresentation, did not intend to do the act promised and had an intent to deceive. Clanton v. Bains Oil Co., 417 So.2d 149
(Ala. 1982)."
Benetton Services Corp. v. Benedot, Inc.,551 So.2d 295, 298 (Ala. 1989).
As to the Keiths' argument that Hartford fraudulently promised to "total" their car, the most favorable testimony for the Keiths was Mr. Keith's deposition testimony:
 "Q. When did Mr. Henry or anyone from Hartford next get in contact with you or you in contact with them?
 "A. Probably Monday the following week, a couple of days later, two or three or four days later.
"Q. Did they call you or did you call them?
"A. Mr. Henry called me.
 "Q. All right. And what did he contact you about at that time?
 "A. In other words, it concerned the automobile, said it was, in other words, the accident looked like it was Mr. Bueger's fault, in other words, the head-on collision.
"Q. All right.
 "A. That the car had extensive damage to it, that the car in all probability at that point would be totalled.
 "Q. All right. Do you remember the date of that conversation?
 "A. That was — I don't remember the date. It was two or three days after the first contact.
 "Q. All right. Is it your testimony that he told you at that point that the car would probably be totalled?
"A. Yes, sir. That is correct."
(Emphasis added.)
The above-quoted testimony does not evince a promise to perform a future act. *Page 1273 
Rather, the statement by Hartford constitutes a statement of opinion, not of fact, that Hartford's act of totalling the automobile was likely to occur. Such a statement of opinion, without the requisite element of intent to deceive, will not support an action for fraud. See Fraser v. Reynolds, [Ms. 88-1466, -1522, September 14, 1990] (Ala. 1990);Reynolds v. Mitchell, 529 So.2d 227 (Ala. 1988); see, also, Prosser Keeton on the Law of Torts, n. 6 § 109, at 762 (5th ed. 1984).
Even if Hartford's statement that the automobile would probably be totalled was, in fact, a promise to perform in the future, the Keiths would have had to present evidence to show that Hartford, at the time it made the promise, did not intend to perform and had an intent to deceive. Benetton ServicesCorp. v. Benedot, Inc., supra. The Keiths failed to do this. Rather, the undisputed evidence presented by Hartford reveals that after Henry told Mr. Keith that the automobile would probably be totalled, Henry called Witt to notify it of that probability. At this time Witt informed Henry that it had already completed one-half of the repair work under an authorization executed by Keith when Keith was in Crivitz, Wisconsin; Witt also told Henry that Mr. Keith had told Witt to proceed with the repair work as authorized and that it had done the work after being told that. After this conversation with Witt, however, Henry did not call Mr. Keith back to inform him of the situation. Even though Henry did not notify the Keiths that Witt had undertaken to repair their automobile, the Keiths presented no evidence to prove that at the time Hartford made the statement that the automobile would probably be totalled, it had no intention of totalling the automobile but rather had the present intent not to total it.
Likewise, the Keiths also failed to present evidence that Hartford's statement that it would "take care of everything" was made with an intent not to perform. "The failure to perform a promised act is not in itself evidence that the defendant, at the time the promise was made, intended to deceive."Russellville Production Credit Ass'n v. Frost,484 So.2d 1084, 1086 (Ala. 1986).
The Keiths also contend that Hartford fraudulently concealed the fact that Witt had begun and would complete the repair work on the Keiths' automobile, rather than transporting the automobile to Alabama for repairs. We find no merit to this claim.
An obligation to communicate is one of the requisite elements of fraudulent concealment. Ala. Code 1975, § 6-5-102. When Hartford contacted Witt concerning the Keiths' automobile, Witt informed Hartford that it had already begun repairs pursuant to an authorization executed by Mr. Keith. Although the Keiths have challenged the validity of that authorization in connection with their various claims,[2] the undisputed evidence shows that, at the time the obligation to communicate allegedly arose, no representative of Hartford had any information indicating that the authorization was not valid. Under the circumstances of this case, Hartford, which was not the Keiths' insurer, had no legal obligation to go behind the authorization and to question the statement that Witt had begun and would complete the repair work on the Keiths' automobile.
Based on the foregoing, we hold that the trial court properly entered the summary judgment in favor of Hartford on the Keiths' fraud claims.
The Keiths also allege that both Hartford and Blackmon are guilty of conversion, because, the Keiths say, Hartford and Blackmon directed, authorized, induced, and ratified unauthorized repair work performed by Witt on the Keiths' automobile and deprived the Keiths of the use of their automobile by attempting to coerce them to accept the repair work and to endorse a three-party check issued by Hartford to the Keiths and Witt.
In order to substantiate their claim of conversion against Hartford and Blackmon, *Page 1274 
the Keiths had to present evidence of "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse" of their property by Hartford. Ex parte SouthTrust Bank of Alabama, N.A.,523 So.2d 407, 408 (Ala. 1988). The gist of a cause of action based on conversion is "the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession. Ott v.Fox, 362 So.2d 836 (Ala. 1986)." Id.
It is undisputed that Witt performed the repair work on the Keiths' automobile and that it began those repairs without ever discussing the matter with Hartford. In fact, Witt contends that it began the repairs on written and oral authorization from Mr. Keith, and, as previously noted, it is undisputed that neither Hartford nor its agents who are named as defendants had anything to do with Mr. Keith's signing the authorization for repair or had a legal obligation to question the validity of the authorization. In addition, there is no evidence that Hartford ever had the authority to, or that it did in fact, instruct Witt to perform the repairs. Furthermore, the fact that Hartford issued a three-party check for the repair work Witt had performed on the automobile does not, in itself, indicate wrongful or illegal conduct on the part of Hartford. From our review of the evidence presented in the instant case, any detainer of the Keiths' automobile, whether wrongful or not, was committed by Witt and not by Hartford. A conversion count against Witt is still pending in the trial court.
Based on the foregoing, because the Keiths presented no evidence that Hartford and Blackmon wrongfully exercised dominion over their automobile, we cannot hold the trial court in error for entering summary judgment in favor of Hartford and Blackmon on the Keiths' claims of conversion against them.
The Keiths also allege that Hartford, Blackmon, and Witt conspired to convert the Keiths' automobile and that Hartford, Blackmon, and Witt conspired to injure the Keiths by performing unauthorized work on their automobile and by forcing them to accept unauthorized repairs and Hartford's three-party check. Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. Eidson v. Olin Corp., 527 So.2d 1283
(Ala. 1988). The gist of an action alleging civil conspiracy is not the conspiracy itself, but rather, the wrong committed.Sadie v. Martin, 468 So.2d 162 (Ala. 1985).
As mentioned above in the discussion of the Keiths' conversion claims against Hartford and Blackmon, Witt initiated the repair work on the Keiths' automobile pursuant to an authorization executed by Mr. Keith, and neither Hartford nor Blackmon was involved in any decision concerning whether, or when, Witt was to begin the repairs on the Keiths' automobile. In fact, Hartford and Blackmon had no communication with Witt concerning the repair work until after Witt had begun those repairs.
Thus, after thoroughly reviewing the record, we hold that because the Keiths failed to present evidence that Hartford, Blackmon, and Witt combined to convert the Keiths' automobile, the trial court properly entered the summary judgment in favor of Hartford, Blackmon, and Witt on the Keiths' claims of conspiracy.
For the foregoing reasons, the judgment of the trial court is affirmed.
OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION OVERRULED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] The authorization form that Mr. Keith executed contained the following language:
 "I HEREBY AUTHORIZE the above repair work to be done along with necessary materials. You and your employees may operate above vehicle for purposes of testing, inspection or delivery at my risk. An express mechanic's lien is acknowledged on above vehicle to secure the amount of repairs thereto. You will not be held responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft, accident, or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I understand that all charges are due upon delivery of the vehicle. I acknowledge receipt of a copy of this agreement."
[2] We note that the Keiths did not amend their complaint to add a fraud-in-the-inducement claim against Witt until after the summary judgment for Hartford had been entered. *Page 1275