MOORE, Judge.
 

 Janice Swann, individually and as the administratrix of the estate of Roger Swann, appeals from a summary judgment in favor of Regions Bank and Melanie Barnett. We affirm.
 

 Facts and Procedural History
 

 The record reveals the following: On July 9, 2003, Roger and Janice Swann, husband and wife, entered into a construction contract with Ray Bonner Home Builders, L.L.C. Under that contract, Ray Bonner Home Builders agreed to construct a house for the Swanns on the Swanns’ five-acre tract of property. Ray Bonner, the managing member of Ray Bonner Home Builders, then arranged for a construction loan for a “pre-sale” from Regions Bank; the “pre-sale” he referred to was the house he had agreed to construct for the Swanns. Ray Bonner obtained approval for the loan through Melanie Barnett, who was employed at that time by Regions Bank as a commercial loan officer. Regions Bank approved the loan as a business loan in the name of Ray Bonner Home Builders.
 

 It is undisputed that Barnett knew at the time of the loan that Ray Bonner Home Builders was not a licensed builder. However, according to Barnett, Ray Bonner informed her that Kenneth E. Hooks Builders, L.L.C., was a licensed builder and would be serving as the general contractor for the project. Barnett discussed the situation with her supervisor, and they concluded that the loan could be approved. Barnett arranged for the loan to be closed by Reli, Inc.
 

 On August 1, 2003, Ray Bonner and the Swanns attended a closing of the construction loan at the offices of Reli, Inc. At that closing, Ray Bonner, on behalf of Ray Bonner Home Builders, executed a promissory note in favor of Regions Bank in exchange for the loan proceeds to finance the construction of the Swanns’ house. On that same date, the Swanns conveyed by warranty deed two of their five acres to Ray Bonner Home Builders; Ray Bonner Home Builders then executed a mortgage in favor of Regions Bank against the two acres as collateral for the construction loan. The Swanns were not a party to the loan transaction between Ray Bonner Home Builders and Regions Bank.
 

 Ray Bonner Home Builders began construction of the Swanns’ house. Regions Bank, as the lender, exercised its right under the loan agreement to inspect the progress of the construction at various times. Regions Bank continued to make progress payments to Ray Bonner Home Builders under the loan agreement despite the fact that certain construction problems were noted. At one point, the Swanns attempted to intervene with Regions Bank and requested to take over the project as the general contractor. However, Regions Bank informed the Swanns that it had no contractual relationship with them and that the Bank’s contractual obligations, as the lender, were owed to Ray Bonner Home Builders, as the borrower. Ray Bonner Home Builders expended all the construction-loan proceeds before completing the house. The Swanns could not complete the construction of the house.
 

 On October 7, 2004, the Swanns filed a complaint in the Elmore Circuit Court, naming as defendants Ray Bonner Home Builders; Kenneth E. Hooks Builders;
 
 *1184
 
 Riley H. Bell, a plumber; and Kenneth L. Smith, a brick mason; both Bell and Smith had worked as subcontractors on the house. Regions Bank and Barnett were not identified as defendants in the complaint, although the Swanns included various fictitiously named defendants. In their original complaint, the Swanns asserted claims of negligent or wanton contracting, training, hiring, supervising, retaining and/or inspecting; breach of contract; wantonness; fraud arising out of the failure to construct the house properly and for the agreed-upon price; civil conspiracy; and unjust enrichment. All the claims asserted in the Swanns’ original complaint related to improper construction of the house.
 

 On May 10, 2005, the Swanns filed their first amended complaint, in which they substituted Regions Bank, Melanie Barnett, and Bill Renfroe for fictitiously named defendants.
 
 [1]
 
 The Swanns did not alter the substance of their claims in this amended complaint.
 

 On May 23, 2005, Ray Bonner, the managing member of Ray Bonner Home Builders, filed a suggestion of bankruptcy, notifying the trial court that he had initiated a Chapter 7 bankruptcy proceeding in the United Stated Bankruptcy Court. On June 16, 2005, the trial court stayed all proceedings in the litigation as a result of Ray Bonner’s pending bankruptcy petition. On September 23, 2005, the trial court was notified that Ray Bonner’s debts had been discharged in bankruptcy on June 23, 2005. The Swanns’ litigation then resumed. On June 1, 2006, the trial court granted a motion to dismiss filed by Ray Bonner Home Builders on the ground that all claims asserted against it had been discharged in the bankruptcy proceeding.
 

 Roger Swann died in 2005.
 
 [2]
 
 On January 26, 2007, a second amended complaint was filed, substituting Janice Swann, as the administratrix of the estate of Roger Swann, as a plaintiff. On April 2, 2007, a third amended complaint was filed.
 
 [3]
 
 In this complaint, Janice modified her theories of recovery against Regions Bank and Barnett. Because of the posture of this case, we address only those claims asserted in the third amended complaint against Regions Bank and Barnett and only those claims challenged on appeal.
 
 [4]
 

 In count VIII of the third amended complaint, Janice alleged that Regions Bank and Barnett had been aware that Ray Bonner Home Builders was not a licensed home builder, as required by Alabama law, that Regions Bank and Barnett had failed to disclose that information to the Swanns, that Ray Bonner Home Builders’ nonlicen-sure was a material fact ” that Regions Bank and Barnett had had a duty to disclose, and that the suppression of that fact had induced the Swanns to act. In count XI, Janice alleged that Regions Bank and Barnett had facilitated Ray Bonner Home Builders’ illegal contract with the Swanns in violation of §§ 34-14A-1 through 34-14A-17, Ala.Code 1975, and that, as a result, Regions Bank and Barnett were liable
 
 *1185
 
 for a civil conspiracy. In count XII, Janice alleged that Roger Swann had sought advice in the financing and construction of the house from Regions Bank and that Regions Bank and Barnett had acted in a fiduciary capacity by undertaking to advise Roger Swann that Ray Bonner Home Builders “was a reputable homebuilder who did a lot of business with Regions Bank’s construction loan financing department.” Janice asserted that, as a result of Regions Bank and Barnett’s actions, a fiduciary relationship had arisen, which Regions Bank and Barnett had breached.
 

 On April 20, 2007, Regions Bank and Barnett filed a joint motion for a summary judgment. In support of that motion, Regions Bank and Barnett relied on deposition excerpts from Janice, Barnett, and Spencer Knight, an employee of Regions Bank. Janice formally opposed that motion, but, on August 28, 2007, the trial court entered a summary judgment in favor of Regions Bank and Barnett. The trial court did not state its grounds for entering the summary judgment. Janice filed a motion to reconsider; the trial court denied that motion. On October, 5, 2007, the trial court granted Janice’s motion to voluntarily dismiss all remaining defendants. Janice timely appealed the summary judgment entered in favor of Regions Bank and Barnett to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Standard of Review
 

 ‘“This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.’ ”
 

 Jones v. Alfa Mut. Ins. Co.,
 
 1 So.3d 23, 29 (Ala.2008) (quoting
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).
 

 Analysis
 

 On appeal, Janice asserts that Barnett and Regions Bank had a duty to disclose “material deficiencies in Ray Bonner’s LLC’s ability to construct a home”; that Regions Bank and Barnett breached a fiduciary duty owed to the Swanns; and that Regions Bank and Barnett are liable for a civil conspiracy. We address each of these issues in turn. Additionally, because it could be dispositive, we address as an initial matter another issue raised by Regions Bank and Barnett on appeal — that certain of the claims stated against them in the third amended complaint were time-barred because those claims did not relate back to the filing of the original complaint.
 

 Whether the Claims AsseRed in the Third Amended Complaint Related Back
 

 In their summary-judgment motion, Regions Bank and Barnett argued that the
 
 *1186
 
 “new” claims asserted against them in the third amended complaint, i.e., claims of fraudulent suppression, civil conspiracy, and breach of fiduciary duty, were time-barred because the relation-back doctrine did not apply to save those claims. Regions Bank and Barnett pointed out that those claims were governed by a two-year statute of limitations but that the third amended complaint had been filed some two and one-half years after the filing of the original complaint. Regions Bank and Barnett argued that the Swanns had not alleged facts made the basis of those claims in the original complaint and, therefore, that the “new” claims did not relate back to the filing of the original complaint; thus, they argued, the new claims were time-barred.
 

 Relation back of claims is governed by Rule 15(c), Ala. R. Civ. P. That rule provides:
 

 “(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
 

 “(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, except as may be otherwise provided in Rule 13(c) for counterclaims maturing or acquired after pleading .... ”
 

 In
 
 Prior v. Cancer Surgery of Mobile, P.C.,
 
 959 So.2d 1092 (Ala.2006), the Alabama Supreme Court addressed the relation-back doctrine:
 

 “The Alabama Rules of Civil Procedure allow parties to amend their complaints. Rule 15(a), Ala. R. Civ. P. Even if otherwise barred by the applicable statute of limitations, an amendment to a complaint may be allowed if it ‘arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading .... ’ Rule 15(c)(2), Ala. R. Civ. P. However, if allowing the plaintiff to amend his or her complaint would prejudice the opposing party, the amendment should be denied.
 
 Ex parte Johnston-Tombigbee Furniture Mfg. Co.,
 
 937 So.2d 1035 (Ala.2005). ...
 

 “An amended complaint relates back to the original complaint under Rule 15(c)(2), Ala. R. Civ. P., when “ ‘the same substantial facts are pleaded merely in a different form.” ’
 
 Ex parte Johnston-Tombigbee Furniture,
 
 937 So.2d at 1038 (quoting Court of Civil Appeals’ opinion in
 
 Johnston-Tombigbee Furniture Mfg. Co. v. Berry,
 
 937 So.2d 1029, 1032 (Ala.Civ.App.2004), quoting other cases).”
 

 959 So.2d at 1095 (footnote omitted).
 

 In
 
 Prior, supra,
 
 our supreme court determined that the amended complaint filed in that case did not relate back to the original complaint because the original complaint had sought to impose liability on one physician for his allegedly substandard care on a specified date and the amended complaint sought to impose liability upon another physician for his allegedly substandard care on another specified date. Thus, the acts of the two physicians were distinct and the dates of the alleged acts were distinct. The supreme court concluded that, as a result, the amended complaint could not relate back to the filing of the original complaint. 959 So.2d at 1097.
 

 In
 
 Sonnier v. Talley,
 
 806 So.2d 381 (Ala.2001), the supreme court reached the opposite conclusion and allowed the amended complaint to relate back to the filing of the original complaint. In that case, Talley, the plaintiff, sued physicians and a hospital alleging general negligence and malprac
 
 *1187
 
 tice occurring in connection with her treatment for cancer and an unnecessary hysterectomy “during the period June 1990 through October 1991.”
 
 Sonnier,
 
 806 So.2d at 388. Talley then filed an amended complaint alleging that the same defendants “had made misrepresentations of fact related to the surgery, the cancer, and her health during the period from June 1991 through October 1991.”
 
 Id.
 
 The court held that Talley’s amended complaint related back to her original complaint under Rule 15(c)(2). The court stated:
 

 “Regarding Rule 15(c), this Court has quoted the following with approval:
 

 “ ‘ “Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all of the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged,
 
 such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim.
 
 Similarly, while it is still the rule that an amendment which states an entirely new claim for relief based on different facts will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specific factual details such as time and place, as well as other items, will relate back.
 

 “1 “The [Alabama Rules of Civil Procedure] have broadened the meaning of the concept of ‘cause of action,’ shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim. And an amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back. Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed,
 
 or adds additional grounds of negligence,
 
 changes the theory of the action from one based on contract to one sounding in tort, changes a demand for equitable relief to one for legal relief, states a different fulfillment of conditions precedent, or increases the amount of damages claimed.” ’ ”
 

 Sonnier,
 
 806 So.2d at 386-87 (quoting
 
 National Distillers & Chem. Corp. v. American Laubscher Corp.,
 
 338 So.2d 1269, 1273-74 (Ala.1976), quoting in turn 3 James W. Moore et al.,
 
 Moore’s Federal Practice and Procedure
 
 ¶ 15.15[3], pp. 1025-31 (1968 ed.)).
 

 Thus, even though Talley’s amended complaint alleged a new cause of action, the supreme court held that the amended complaint related back to Talley’s original complaint because the claims asserted in the amended complaint were limited to the same period and to the same parties made the basis of Talley’s original complaint. The supreme court also noted that Talley’s original complaint had notified the defendants of claims arising from the same set of facts made the basis of the amended complaint. The supreme court stated that the amendment had “1 “ma[de] more specific what ha[d] already been alleged.” ’ ”
 
 Sonnier,
 
 806 So.2d at 387 (quoting
 
 National Distillers & Chem. Corp.,
 
 338 So.2d at 1273).
 

 We conclude that the posture of this case is more closely aligned with
 
 Son-
 
 
 *1188
 

 nier, supra,
 
 than with
 
 Prior, supra,
 
 and that the claims asserted against Regions Bank and Barnett in the third amended complaint relate back to the filing of the original complaint. - The causes of action asserted against Regions Bank and Barnett in the third amended complaint relate to the same parties, the same transaction, and the same period made the basis of the claims asserted against Regions Bank and Barnett in the earlier complaints. Janice simply modified the theories of recovery against Regions Bank and Barnett by making more specific what had already been alleged. Because the previous complaints provided Regions Bank and Barnett with a sufficient factual basis from which they could reasonably anticipate the claims presented against them in the third amended complaint, we conclude that the new claims of fraudulent suppression, civil conspiracy, and breach of fiduciary duty relate back to the date of the original complaint.
 
 See Sonnier, supra;
 
 and
 
 Ex parte Johnston-Tombigbee Furniture Mfg. Co.,
 
 937 So.2d 1035, 1043 (Ala.2005). Therefore, the new claims asserted in the third amended complaint are not time-barred.
 

 Whether Regions Bank and Barnett Had a Duty to Disclose or Owed a Fiduciary Duty to the Swanns
 

 Janice asserts that Barnett and, thus, Regions Bank were obligated to disclose to the Swanns “Ray Bonner’s LLC’s professional and legal deficiencies.” (Appellant’s brief at 28.) We interpret this argument to refer to the fact that Ray Bonner Home Builders was an unlicensed builder, pursuant to the Alabama Home Builders Licen-sure Act. Ala.Code 1975, § 34-14A-1
 
 et seq.
 
 This alleged duty to disclose presumably is asserted in support of Janice’s fraudulent-suppression claim, asserted in her third amended complaint.
 

 “The question whether a party had a duty to disclose is a question of law to be determined by the trial court.”
 
 Barnett v. Funding Plus of America, Inc.,
 
 740 So.2d 1069, 1074 (Ala.1999). In
 
 State Farm Fire & Casualty Co. v. Owen,
 
 729 So.2d 834, 842-43 (Ala.1998), our supreme court set forth the factors that must be considered in determining whether a duty to disclose exists: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs’ opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.
 
 See also Armstrong Bus. Servs., Inc. v. AmSouth Bank,
 
 817 So.2d 665 (Ala.2001).
 

 “A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of duty to disclose is not fraudulent....
 

 “This Court has stated that whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case.... When the parties to a transaction deal with each other at arm’s length, with no confidential relationship, no obligation to disclose information arises when the information is not requested.”
 

 Mason v. Chrysler Corp.,
 
 653 So.2d 951, 954-55 (Ala.1995).
 

 We conclude that the present case is most appropriately governed by the rationale in
 
 Ex parte Farmers Exchange Bank,
 
 783 So.2d 24 (Ala.2000), in which the Alabama Supreme Court held that an even closer business relationship between a bank and its customer was not sufficient to
 
 *1189
 
 give rise to a duty to disclose. In
 
 Ex parte Farmers Exchange Bank,
 
 Cole, the plaintiff and the purchaser of residential property, sought financing for that property from the bank.
 
 Id.
 
 at 26. In connection with the financing process, a termite inspection was conducted. That inspection revealed an active termite infestation. The inspection report was forwarded to the bank before the closing, and, thus, the bank was presumed to have knowledge of the contents of that report.
 
 Id.
 
 After the closing and after taking possession of the property, Cole discovered the termite infestation.
 
 Id.
 
 at 27.
 

 Cole sued the bank, alleging that the bank had not told her the results of the inspection and that the inspection report had not been presented to her at the closing, as the seller of the property had been required to do. Cole alleged that the house had been inspected for termites; that the bank knew or should have known that the house had termites and/or that it had termite damage; and that the bank had proceeded to provide Cole financing to purchase the house, without informing her of the results of the termite inspection.
 
 Id.
 
 at 26. Cole further alleged that the bank had “‘caused, permitted, condoned, or allowed ... fraud to be perpetrated upon’ ” her.
 
 Id.
 
 However, it was undisputed that Cole had not inquired of the bank whether the house had termites or whether it knew the results of the inspection.
 
 Id.
 
 at 26-27.
 

 The trial court entered a summary judgment in favor of the bank, holding that the bank had no duty to disclose to Cole, its customer, the existence of deficiencies in the property it was financing for her.
 
 Id.
 
 at 27. On appeal, the Alabama Supreme Court affirmed. In affirming the summary judgment, our supreme court stated:
 

 “The question at issue in this case revolves around the second element of fraudulent suppression — specifically, it is whether the Bank had a duty to disclose to Cole the termite damage indicated by Copter Pest Control’s report. The existence of a duty is a question of law to be determined by the trial court.
 
 State Farm Fire & Cas. Co. v. Owen,
 
 729 So.2d 834 (Ala.1999). A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case. Ala.Code 1975, § 6-5-102;
 
 Ex parte Ford Motor Credit Co.,
 
 717 So.2d 781, 785 (Ala.1997). This Court has stated that the only circumstance under which a lender who is merely providing financing for the sale of some item can have a duty to disclose information related to the condition of that item is if the plaintiff makes a specific request of the lender for that information. See
 
 Ex parte Ford Motor Credit Co.,
 
 717 So.2d at 785-87.”
 

 783 So.2d at 27.
 

 The court continued:
 

 “Cole made no specific request to the Bank that a termite bond be presented to her before closing. This distinguishes this case from
 
 Soniat [v. Johnson-Rast & Hays,
 
 626 So.2d 1256 (Ala.1993)]. The sales contract between Miller [the seller] and Cole provided that at the closing Miller would provide Cole with a termite-inspection report. It is without dispute that the termite report was given to the Bank for the sole purpose of allowing the Bank to record the amount of the inspection fee on the appropriate HUD report.
 

 “With
 
 Soniat
 
 clarified, we address the question whether the Bank had a duty to disclose to Cole information concerning termite damage — a duty arising either from their relationship or from other circumstances surrounding the
 
 *1190
 
 transaction in which they were both involved.
 

 “In
 
 Lee v. United Federal Savings & Loan Ass’n,
 
 466 So.2d 131 (Ala.1985), this Court dealt with the issue whether a lending institution could be held liable for fraud that might have occurred in a transaction in which it was merely providing financing. We held:
 

 “ ‘[T]he mere lending of money on a house by a financial institution, albeit one with knowledge of deficiencies in the house,
 
 does not create a confidential relationship, or other circumstances imposing a duty to disclose information at the lender’s disposal.’
 

 “466 So.2d at 134. (Emphasis added.) As we have already stated, the Bank’s single role was to provide financing to Cole. This Court in
 
 Lee
 
 made it clear that a lender in this kind of situation has no duty arising from the relationship between it and the borrower to inform the borrower of any deficiencies in the house she is purchasing, including deficiencies related to termite damage.
 

 “However, the Bank could still be liable to Cole if the situation between them is similar to the one in
 
 Soniat
 
 — i.e., if Cole made a specific request
 
 of the Bank
 
 for information about the possibility of termite damage. See
 
 Ex parte Ford Motor Credit Co.,
 
 717 So.2d at 786;
 
 Gewin v. TCF Asset Mgmt. Corp.,
 
 668 So.2d 523 (Ala.1995);
 
 Altmayer v. City of Daphne,
 
 613 So.2d 366 (Ala.1993);
 
 Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.,
 
 611 So.2d 238 (Ala.1992). This case is unlike
 
 Soniat,
 
 where the particular facts indicated that the buyer had asked for the relevant information, and a duty to disclose had thus arisen. In this present case, no evidence before the trial court suggested that a separate duty on the part of the Bank had arisen. While Cole did, through the purchase agreement, make inquiry of Miller (the seller) concerning termite damage, she made no request of the Bank concerning termite damage, either in the purchase agreement, orally, or otherwise. Therefore, no duty on the part of the Bank to disclose could have arisen.”
 

 783 So.2d at 28-29. The supreme court thus concluded that, without an inquiry from the purchaser as to the specific deficiency in issue, the bank had no duty to disclose information about the deficiencies in the house or the property made the subject of the loan. The court further concluded that, despite the fact that the bank had undertaken to finance the property for its customer, none of the circumstances presented in that case warranted the imposition of a duty on the bank to disclose.
 

 Applying the rationale of
 
 Ex parte Farmers Exchange Bank, supra,
 
 to this case, we conclude that Regions Bank and Barnett had no duty to disclose Ray Bonner Home Builders’ lack of a home builder’s license to the Swanns. We first note that no contractual relationship existed between Regions Bank or Barnett and the Swanns; thus, Regions Bank and Barnett had no contractually imposed duty to disclose.
 

 Additionally, there is no allegation that Roger or Janice ever directly asked Barnett or anyone else affiliated with Regions Bank whether Ray Bonner Home Builders was a licensed home builder. Janice testified at her deposition that she had never met and had never had a “real” conversation with Barnett; there is also no allegation that Janice ever met or discussed Ray Bonner Home Builders -with anyone else from Regions Bank.
 

 Unfortunately, Roger died before his testimony could be preserved under oath,
 
 see
 
 Rule 804, Ala. R. Evid. (specifying
 
 *1191
 
 limited exceptions to Alabama’s evidentia-ry prohibition against hearsay, none of which would allow admission of Janice’s recollection of Roger’s statements regarding his conversations with Barnett). Barnett testified that she did not recall having ever met Roger. We, therefore, find no admissible evidence in the record to indicate that the Swanns ever asked Regions Bank or any of its agents or representatives whether Ray Bonner Home Builders was a licensed home builder.
 
 [5]
 
 Thus, a duty to disclose did not exist by virtue of a direct inquiry.
 

 Further, as was the case in
 
 Ex parte Farmers Exchange Bank, supra,
 
 and
 
 Lee v. United Federal Savings & Loan Ass’n,
 
 466 So.2d 131 (Ala.1985), we find no fiduciary or confidential relationship or any other special circumstances to exist between Regions Bank or Barnett and the Swanns that might have given rise to a duty to disclose.
 
 See Ex parte Farmers Exch. Bank,
 
 783 So.2d at 29 (quoting
 
 Lee v. United Fed. Savings & Loan Ass’n,
 
 466 So.2d at 134) (“ ‘[T]he mere lending of money on a house by a financial institution, albeit one with knowledge of deficiencies in the house,
 
 does not create a confidential relationship, or other circumstances imposing a duty to disclose information at the lender’s disposal.’ ”).
 
 “Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank.”
 
 Baylor v. Jordan,
 
 445 So.2d 254, 256 (Ala.1984).
 
 See also K & C Dev. Corp. v. AmSouth Bank, N.A.,
 
 597 So.2d 671 (Ala.1992), and
 
 McIntyre Elec. Serv., Inc. v. SouthTrust Bank,
 
 495 So.2d 1043 (Ala.1986). Thus, even if the Swanns had been customers of Regions Bank and had been parties to the construction-loan agreement between Regions Bank and Ray Bonner Home Builders, which they were not, no fiduciary relationship would have arisen as a result.
 

 Janice briefly asserts that she and Roger were third-party beneficiaries of the construction loan made by Regions Bank to Ray Bonner Home Builders and that a duty to disclose could have arisen by virtue of that relationship. We disagree.
 

 “ ‘[I]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to his incidental, benefit.’
 
 Mills v. Welk,
 
 470 So.2d 1226, 1228 (Ala.1985). ‘To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached.’
 
 Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.,
 
 512 So.2d 99, 101-02 (Ala.1987).”
 

 McGowan v. Chrysler Corp.,
 
 631 So.2d 842, 848 (Ala.1993). We find no evidence indicating that Regions Bank intended to bestow a direct, as opposed to an incidental, benefit on the Swanns at the time the construction loan to Ray Bonner Home Builders was made.
 

 Janice also points this court to the case of
 
 Richfield Bank & Trust Co. v. Sjogren,
 
 309 Minn. 362, 244 N.W.2d 648 (1976), in support of her claim that Regions Bank and Barnett had a duty to disclose based on special circumstances that she alleged are present in this transaction. However, that case is inapposite, and we decline to
 
 *1192
 
 apply its holding in this case. In
 
 Richfield Bank,
 
 the Sjogrens obtained a business loan from the Richfield Bank for the purpose of purchasing 50 air-purification units from National Pollution Eliminators, Inc. 309 Minn, at 364, 244 N.W.2d at 649. The Sjogrens dealt with one individual, Michael Thompson, at the bank; National Pollution Eliminators had referred the Sjogrens to Thompson for the loan. 309 Minn. at 363, 244 N.W.2d at 649. In order to secure the loan, the Sjogrens were required to sign a note and to convey a security interest in some real estate and in the 50 air-purification units. 309 Minn. at 364, 244 N.W.2d at 649.
 

 The Sjogrens subsequently learned that National Pollution Eliminators was financially insolvent, that National Pollution Eliminators would not have 50 air-purification units available, and that Thompson was personally involved in the day-to-day dealings of National Pollution Eliminators. 309 Minn. at 364-65, 244 N.W.2d at 649-50. In fact, the Sjogrens met with Thompson and Thompson stated that, at the time the bank had closed the Sjogrens’ loan, Thompson had known that National Pollution Eliminators would not be able to provide the 50 air-purification units to the Sjogrens.
 
 Id.
 
 National Pollution Eliminators went out of business shortly thereafter. 309 Minn. at 364 n. 1, 244 N.W.2d at 649 n. 1.
 

 The bank sued to collect on the note, and the Sjogrens argued that the bank had fraudulently induced them to enter- into the transaction. 309 Minn. at 363, 244 N.W.2d at 649. The jury returned a verdict in favor of the Sjogrens, and the bank appealed.
 
 Id.
 
 On appeal, the Supreme Court of Minnesota affirmed the judgment entered on the jury’s verdict in favor of the Sjogrens.
 
 Id.
 
 The court concluded that, under the “unique and narrow ‘special circumstances’ of this case,” the bank, through Thompson, its agent, had actual knowledge of fraudulent activities on the part of its depositor, National Pollution Eliminators, and that it had an affirmative duty to disclose those facts to the Sjogrens before it engaged in making a loan to them that furthered another customer’s fraud. 309 Minn. at 369, 244 N.W.2d at 652.
 

 The facts and allegations presented in this case do not rise to the level of those presented in
 
 Richfield Bank, supra.
 
 First and most significantly, unlike in
 
 Richfield Bank,
 
 Regions Bank was not involved with two of its customers; Regions Bank did not make a loan to the Swanns. Therefore, Regions Bank and Barnett had no duty to disclose to the Swanns. Second, Janice has presented no evidence indicating that Barnett or Regions Bank had actual knowledge of fraudulent activities of the type at issue in
 
 Richfield Bank.
 
 Third, Janice has presented no evidence indicating that Barnett was involved in the day-to-day affairs of Ray Bonner Home Builders or in any of the affairs of Ray Bonner Home Builders other than its banking matters. Therefore, the rationale and reasoning of
 
 Richfield Bank
 
 is inapplicable to this case.
 

 We also decline to recognize a duty to disclose owed by Regions Bank or Barnett by virtue of the public policy that underlies the Alabama Home Builders Li-censure Act. Nothing in the act can be construed as creating a private right of action against a lending entity for its failure to notify a third party that it has contracted with an unlicensed builder. Likewise, nothing in the act forbids a lender from entering into a loan agreement with an unlicensed builder. The act imposes a duty to obtain a license on the builder, not a duty of oversight on the part of financing institutions.
 
 See
 
 34-14A-1
 
 et seq.,
 
 Ala.Code 1975. Had the legislature intended the act to create liability in such a manner, it could have so indicated. We
 
 *1193
 
 also find no authority for such a result in the prior cases of this state. For the foregoing reasons, we conclude that Regions Bank and Barnett had no duty to disclose to the Swanns that Ray Bonner Home Builders was an unlicensed home builder.
 

 Janice also asserts that Barnett’s alleged recommendation to the Swanns of Ray Bonner Home Builders as a builder with whom Regions Bank did a lot of business and as a reputable builder created a fiduciary duty on the part of Regions Bank. Because a duty to disclose or a fiduciary duty may arise from a confidential relationship or from the particular circumstances of the case, we examine this allegation to determine if it could give rise to a potential duty to disclose or a heightened responsibility on the part of Regions Bank and Barnett.
 
 [6]
 

 A “confidential relationship,” which may give rise to a duty to disclose, has been defined as
 

 “ ‘[ [a] relationship in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other’s interests, or when one person has gained the confidence of another and purports to act or advise with the other’s interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.’ ”
 

 Holdbrooks v. Central Bank of Alabama, N.A.,
 
 435 So.2d 1250, 1252 (Ala.1983) (quoting 15A C.J.S.
 
 Confidential
 
 (1967));
 
 see also Bank of Red Bay v. King,
 
 482 So.2d 274, 285 (Ala.1985) (“While the relationship between a bank and its customer has been traditionally viewed by courts as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank, a fiduciary duty may, nevertheless arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances.”).
 

 A fiduciary relationship is defined as
 

 “[a] relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship.... Fiduciary relationships usu. arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.”
 

 Black’s Law Dictionary
 
 1315 (8th ed.2004).
 

 However, the circumstances of this case do not give rise to a confidential relationship between Regions Bank or
 
 *1194
 
 Barnett and the Swanns, and none of the categories of fiduciary relationships identified in
 
 Black’s Law Dictionary
 
 are applicable. Assuming that Barnett “recommended” Ray Bonner Home Builders to Roger as someone with whom Regions Bank did a lot of business and as a reputable builder, and assuming that Janice’s testimony on that point was admissible, Janice’s affidavit testimony establishes that the Swanns did not rely on that alleged recommendation.
 

 In her affidavit submitted in opposition to the summary-judgment motion filed by Regions Bank and Barnett, Janice asserted that, after Roger met with Barnett, the Swanns searched out previous customers and previous work of Ray Bonner Home Builders before deciding to hire Ray Bonner Home Builders as their contractor. Only after conducting their investigation and deciding that “everything seemed to check out,” did the Swanns execute the construction contract with Ray Bonner Home Builders.
 

 Thus, the evidence establishes, at most, that Roger met one time with Barnett; the stated purpose of that meeting was to inquire about the possibility of obtaining a construction loan. Even if Barnett referred Roger to Ray Bonner Home Builders during that meeting, Roger did not repose his trust and confidence in Barnett’s alleged advice. Janice could not have reposed any trust in Barnett because Janice had never met or talked to Barnett. Accordingly, no fiduciary or confidential relationship existed between Regions Bank or Barnett and the Swanns, and no duty to disclose arose as a result. Without the existence of a fiduciary duty or relationship, Janice’s breach-of-a-fidueiary-duty claim fails as a matter of law.
 

 For the above-stated reasons, we conclude that Regions Bank and Barnett had no duty to disclose to the Swanns and that no fiduciary relationship existed between Regions Bank or Barnett and the Swanns. We affirm the summary judgment in favor of Regions Bank and Barnett as to the fraudulent-suppression and breach-of-fiduciary-duty claims.
 

 The Conspiracy Claim
 

 Janice next asserts that Regions Bank, acting through Barnett, “orchestrated” the loan closing and, thus, “directed” the Swanns to convey their property to Ray Bonner Home Builders. As a result, Janice asserts that Regions Bank and Barnett are liable for a conspiracy to deprive the Swanns of the protections of the Alabama Home Builders Licensure Act.
 

 Although the errors in this argument are numerous, we need not address them other than to point out that, as a result of our analysis above, all remaining claims in this case have been dismissed. We have herein affirmed the summary judgment entered in favor of Regions Bank and Barnett as to the claims of fraudulent suppression and breach of fiduciary duty. Additionally, Janice voluntarily dismissed all claims asserted against the remaining defendants. Thus, the only remaining claim to be addressed is the claim of a civil conspiracy asserted against Regions Bank and Barnett.
 

 “Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.”
 
 Keith v. Witt Auto Sales, Inc.,
 
 578 So.2d 1269, 1274 (Ala.1991) (citing
 
 Eidson v. Olin Corp.,
 
 527 So.2d 1283 (Ala.1988)). “The gist of an action alleging civil conspiracy is not the conspiracy itself, but rather, the wrong committed.” 578 So.2d at 1274 (citing
 
 Sadie v. Martin,
 
 468 So.2d 162 (Ala.1985)). For that reason, “[a] civil conspiracy cannot exist in the absence of an underlying
 
 *1195
 
 tort.”
 
 Goolesby v. Koch Farms, LLC,
 
 955 So.2d 422, 430 (Ala.2006) (citing
 
 Avis Rent A Car Sys., Inc. v. Heilman,
 
 876 So.2d 1111, 1124 (Ala.2003)). Because all other claims asserted by Janice have been dismissed, there is no underlying tort claim that could possibly support her conspiracy claim; as a result, her conspiracy claim fails as a matter of law. Therefore, we affirm the trial court’s summary judgment in favor of Regions Bank and Barnett as to the conspiracy claim.
 

 AFFIRMED.
 

 PITTMAN and THOMAS, JJ., concur.
 

 THOMPSON, P.J., and BRYAN, J., concur in the result, without writings.
 

 [1]
 

 . All claims asserted against Renfroe were dismissed without prejudice on April 10, 2007.
 

 [2]
 

 . On August 29, 2005, a suggestion of death of Roger Swann was filed.
 

 [3]
 

 . Although Regions Bank and Barnett moved to strike this complaint because it was filed without leave of court within 42 days of the trial date, the trial court ultimately allowed Janice's subsequent motion to amend. Therefore, the third amended complaint was deemed to be properly before the trial court.
 

 [4]
 

 .Janice dismissed her claims against all other defendants before filing this appeal. Therefore, the only remaining defendants are Regions Bank and Barnett.
 

 [5]
 

 . Based on the issues presented to this court on appeal, it appears that Janice has abandoned her claim of a direct misrepresentation by Barnett.
 

 [6]
 

 . Although Janice presents her breach-of-fiduciary-duty claim as a separate issue, it is dependent upon a duty to disclose, as is her fraudulent-suppression claim. We, therefore, analyze that issue under the same heading as the fraudulent-suppression claim.